89 U.S. 496 (____)
22 Wall. 496
PIATT'S ADMINISTRATOR
v.
UNITED STATES.
Supreme Court of United States.

*502 Messrs. William Johnson and Thomas Wilson, for the appellant.
Mr. G.H. Williams, Attorney-General, and Mr. John Goforth, Assistant Attorney-General, contra.
*505 Mr. Justice CLIFFORD delivered the opinion of the court.
Attempt is made, chiefly on two grounds, to vindicate the conclusion of the Court of Claims, that the cause of action *506 is barred by the allowance reported by the accounting officers of the treasury. The grounds are:
(1.) That the auditor passed to the credit of the deceased claimant the amount claimed by the United States as due from him as commissary of subsistence, and that he, the claimant, accepted the settlement without protest.
(2.) That Congress intended by the act directing the adjustment of his accounts that the settlement should be final and conclusive; that the act was in the nature of an offer for a disputed claim, and that the acceptance of the adjustment is a bar to the claim.
1. Verbal agreements between the parties to a written contract made before or at the time of the execution of the contract are, in general, inadmissible to vary its terms or to affect its construction, as all such agreements are considered as merged in the written contract. Both parties admit that proposition, nor is it denied by the defendants that oral agreements subsequently made, on a new and valuable consideration, before the breach of the contract, may have the effect to enlarge the time of performance of the contract, if it is not one within the statute of frauds, or that such an oral agreement may have the effect to vary any of the terms of the written contract or to waive or discharge it altogether.
Exceptions, it is everywhere admitted, exist to the rule that parol evidence is not admissible to contradict or vary the terms of a written instrument. Most of such exceptions are enumerated by Mr. Greenleaf, and in the course of that enumeration he says: "Neither is the rule infringed by the admission of oral evidence to prove a new and distinct agreement upon a new consideration, whether it be as a substitute for the old or in addition to and beyond it; and if subsequent and involving the same subject-matter it is immaterial whether the new agreement be entirely oral or whether it refers to and partially or totally adopts the provisions of the written contract, provided the old agreement be rescinded and abandoned."[*]
*507 Sufficient appears in the very nature of the new arrangement to show that the promise of the United States was made upon a good and valid consideration, as nothing is better settled than the rule that if there is a benefit to the defendant and a loss to the plaintiff consequent upon and directly resulting from the defendant's promise in behalf of the plaintiff, there is a sufficient consideration moving from the plaintiff to enable the latter to maintain an action upon the promise to recover compensation.[*]
Other authorities state the rule much stronger, authorizing the conclusion that benefit to the party by whom the promise is made, or to a third person at his instance, or damage sustained at the instance of the party promising by the party in whose favor the promise is made is sufficient to constitute a good and valuable consideration for the support of an action of assumpsit.[]
Modern authorities supporting the proposition that parol evidence is admissible to prove such a new agreement, under the circumstances disclosed in this case, are very numerous and are quite sufficient to show that the proposition may be regarded as an established rule of decision.[]
Apply that rule to the case and it is quite clear that the whole amount claimed by the plaintiff was due to the deceased claimant at the time his accounts were adjusted by the accounting officers of the treasury in addition to the amount claimed by the United States in set-off for balance due from him as commissary of subsistence. Well-founded doubt upon that subject cannot be entertained, as it satisfactorily appears that in order to reduce his claim to an amount not exceeding the claim of the United States, those *508 officers found it necessary to deduct from the aggregate estimate of the value of the rations furnished under the parol agreement, an amount exactly equal to the balance found due to the claimant by the subordinate court from whose judgment the appeal is prosecuted in this case.
Nothing was paid to the claimant under that private act except what was allowed to the claimant for services and expenses in furnishing transportation and rations for the use of Indians and indigent citizens. He was discharged from arrest and the balance due from him to the United States for the moneys in his hands as commissary of subsistence was also discharged, but nothing was paid to him for the large balance now found to be due by the court below. Argument to show that such a settlement is not a bar to the residue of the claim is unnecessary, as the proposition is utterly destitute of merit and repugnant to the plainest dictates both of law and justice.
2. Opposed to that is the suggestion, in behalf of the United States, that the act of Congress was in the nature of an offer of compromise, and that the acceptance of the adjustment is a bar to the claim.
Support to that proposition is attempted to be drawn from the decision of this court in the case of Mason v. United States,[*] but the court here is very clearly of the opinion that the case cited affords no countenance whatever to any such conclusion. Muskets were wanted by the United States in that case, and it appears that the plaintiff in that controversy contracted to manufacture and deliver at a specified time large quantities of such arms at the price specified in the contract. Arms of the kind were delivered and paid for, and the plaintiff was notified by order of the Secretary of War that a larger quantity would be received. Preparations were accordingly made by the plaintiff to fill the second order, but the Secretary of War subsequently appointed a special commission to audit and adjust all such orders and claims. They reported that the contract should be confirmed *509 to a certain extent upon the condition that the contractor should, within fifteen days after notice of their decision, execute a bond, with good and sufficient sureties, for the performance of the modified contract, and the case shows that he executed the modified contract and gave the required bond. By that contract he engaged to manufacture thirty thousand muskets, and the finding of the subordinate court showed that the contract was fulfilled by both parties.
What the court decided in that case was that the claimant voluntarily accepted the modification of the contract as suggested by the commissioners and that he executed the new contract in the place of the one superseded, which new contract he must have understood was intended to define the obligations of all concerned. Beyond all doubt the new contract in that case was substituted for the old one, and the court held that no party, after accepting such a compromise and executing such a discharge, could be justified in claiming damages for a breach of the prior contract which had been voluntarily modified and surrendered.
Other cases to the same effect have been decided by this court.[*] None of those cases, however, proceed upon the ground that such a commission possesses any judicial power to bind the parties by their decision or to give the decision any conclusive effect. Claimants in such cases may appear before the commission or not, as they choose, but the decision is, if they do appear and accept the terms awarded as a final settlement of the controversy, without protest, they must be understood as having precluded themselves from further claim and litigation.
Where a party accepts the amount awarded in such a case it is just to conclude that he acquiesces in the decision of the tribunal by which a part of the claim is rejected as well as in the finding in his favor, but the accounting officers in this case were forbidden by law to allow the claimant anything beyond the amount in his hands as commissary of subsistence, and they obeyed the directions given in the act *510 of Congress. Manifestly the claimant had no option upon the subject, and in the opinion of the court it would be an unreasonable construction of the act of Congress to suppose that its framers intended that the claimant should relinquish the large balance found to be due him in consideration of his discharge from arrest and the discontinuance of the suit against him for the recovery of the amount due from him to the United States.
Certain cases from the State reports are referred to which it is supposed assert a different rule, but the court here is of a different opinion.[*]
Suffice it to say that in the case before the court no appropriation whatever was made in favor of the claimant. Where the claim is disputed and an appropriation is made in favor of the claimant for an amount less than the amount claimed, and appropriation purports to be in full payment of the demand, the rule may be different, but it is sufficient to say in response to those authorities that nothing was appropriated in this case, and the accounting officers of the treasury were forbidden to allow anything beyond what was involved in the pending suit against the claimant.
JUDGMENT REVERSED, and the cause remanded with instructions to render JUDGMENT IN FAVOR OF THE PETITIONER for $131,508.90, the amount found to be due him in the findings of the Court of Claims.
Mr. Justice BRADLEY, with whom concurred Justices SWAYNE, DAVIS, and HUNT, dissenting:
I dissent from the judgment of the court in this case. In my view the case was decided and settled more than fifty years ago. The claim cannot be established without opening that settlement, and declaring that a valid contract was made which had been decided not to be a valid contract, but only a mere claim for some equitable allowance which was in fact made and accepted at that time.
*511 Piatt, the original claimant, was an army contractor in the Northwest during the war of 1812. Becoming embarrassed by not receiving funds from the government, and from the great rise in the prices of provisions, he threatened to throw up his contract; but, the allegation is, that at the request of Mr. Monroe, then acting Secretary of War, and upon his assurances that he should not be the loser, he went on, and furnished supplies to a large amount. For these supplies he claimed a large allowance beyond the amount stipulated in his contract. The petition, after alleging that the officers of the treasury, feeling themselves bound only by what appeared of record in the department, allowed to Piatt, in the settlement of his account for rations furnished after the first day of January, 1815, no more than the original contract price per ration, states further that Piatt then brought his claim before the Secretary of War, Mr. Crawford, who would have settled it on the principles for which Piatt then contended, "but that, by reason of what he considered countervailing evidence, he had doubts whether such assurances had ever been given."
Thus it is seen that there were two sides to the question at that early day, when all the events were fresh, and when Mr. Monroe was living at the seat of government, and accessible at any moment.
In 1820, Piatt was arrested for $48,230.77, the balance found due to the government in his accounts, as ascertained by the settlement at the department. He then brought his claim before Congress, and the Judiciary Committee of the Senate reported adversely thereto. But on the 8th of May an act was passed for his relief.[*]
Thereupon his accounts were restated under the provisions of the act; and the officers of the department, after allowing him the sum of $63,620.48 for provisions furnished to friendly Indians and to distressed settlers of Michigan (which was entirely outside of his contract, and was afterwards paid in full), allowed him a credit on the footing of *512 the assurances of Mr. Monroe for $48,230.77, the full amount of the claim for which he had been arrested. He was thereupon discharged from custody on the 25th of July, 1820, and died in February, 1822. The present claim is prosecuted by his representatives.
Upon these facts it seems difficult to resist the conviction that, in the contemplation of both parties (Piatt and the government), this case was then and there forever ended and determined. Between individuals it must necessarily have been so. Had such a disputed and doubtful claim been held by one man against another, and left to arbitration, subject to the condition that no sum should be awarded beyond a certain amount, and had that amount been awarded and accepted, can there be a doubt that the award would have been binding and conclusive? I think not.
The present case is stronger. Congress proposed to allow Piatt a settlement of his claim by the Treasury Department, in which due weight and consideration should be given to the assurances in question, provided that the sum allowed under them should not exceed the amount claimed by the United States against him, and for which suit had been commenced. He accepted the law, had the benefit of the settlement, and was allowed under the assurances the amount named, which justly cancelled the debt for which he was sued and arrested by the government. Thereupon he was discharged. The declaration of Congress thus made binding by the acts of the party that nothing should be allowed against the government on that claim beyond a certain amount named, was equivalent to a solemn adjudication. It amounted to a declaration of the government that it would not suffer itself to be pursued or molested for a greater sum. Can it now be contended that the act of 1855 constituting the Court of Claims, and allowing suits to be brought against the government on contracts made with it, has opened this adjudication  this settlement and determination of the case? In my judgment, certainly not. The act constituting the Court of Claims was not intended to disturb past adjudications *513 and settlements, and to open afresh claims that had been disposed of. The Court of Claims had no right to go behind the final settlement, and attempt to establish the original facts of the case. Its findings of fact, in this respect, were illegal and void. The government has never consented to be sued on this claim, or on any claims similarly situated.
The conclusion of law to which the court came, I think, was correct, and the decree should be affirmed.
NOTES
[*] 1 Greenleaf on Evidence, 12th edition, § 303; 2 Taylor on Evidence, 6th edition, § 1044; Goss v. Nugent, 5 Barnewall & Adolphus, 65; Nelson v. Boynton, 3 Metcalf, 400; Leonard v. Vredenburgh, 8 Johnson, 39; Marshall v. Lynn, 6 Meeson & Welsby, 109; Stead v. Dawber, 10 Adolphus & Ellis, 57; Stowell v. Robinson, 3 Bingham's New Cases, 927.
[*] 1 Parsons on Contracts, 6th edition, 431.
[] Violett v. Stettinius, 5 Cranch, 150; Chitty on Contracts, 28; Townsley v. Sumrall, 2 Peters, 182.
[] Cummings v. Arnold, 3 Metcalf, 489; Bank v. Woodward, 5 New Hampshire, 99; Blood v. Goodrich, 9 Wendell, 75; Lindley v. Lacey, 17 Common Bench, New Series, 584.
[*] 17 Wallace, 70.
[*] United States v. Child, 12 Wallace, 232; United States v. Justice, 14 Id. 535.
[*] Sholes v. State, 2 Chandler, 182; Baxter v. State, 9 Wisconsin, 44; Calkins v. State, 13 Id. 389.
[*] See it set out, supra, p. 499.  REP.