## TEER v. GEORGE A. FULLER CO.

Circuit Court of Appeals, Fourth Circuit.
January 14, 1929.

No. 2763.

L. P. McLendon, of Durham, N. C., (Jones Fuller, R. P. Reade, H. G. Hedrick, and F. L. Fuller, Jr., all of Durham, N. C., on the brief), for appellant.

A. L. Brooks and Julius C. Smith, both of Greensboro, N. C. (E. S. Parker, Jr., and C. R. Wharton, both of Greensboro, N. C., on the brief), for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

WADDILL, Circuit Judge. This is an appeal from the action of the United States District Court for the Eastern District of North Carolina in entering judgment for only $3,638.25 in appellant's favor, and in dismissing as of nonsuit appellant's claim for $25,448.45.

On December 10, 1927, appellant, Nello L. Teer, instituted an action in the superior court of Durham county, N. C., against the George A. Fuller Company, appellee here, to recover $31,973.58, which cause was removed to the Federal District Court at Raleigh on December 31, 1927. The complaint alleged, among other things, that the plaintiff, Teer, was engaged in the business of a grading contractor, and the defendant company, a corporation organized and existing under the laws of the state of New Jersey, but domesticated under the laws of the state of North Carolina, was engaged in the business of a general construction contractor; that on or about the 5th day of August, 1925, the defendant, then being general contractor for the construction of a number of buildings for Duke University, at Durham, N. C., entered into a contract with plaintiff, whereby plaintiff was employed to do all the excavation work in connection with the construction of said buildings; and that in accordance with the terms of his employment, plaintiff entered upon and completed the work of excavation contracted for.

The complaint further alleged that while plaintiff was engaged in performing his contract with defendant, he was ordered and di-

rected by defendant to do other and additional work, not included in plaintiff's original contract of employment, and that the plaintiff and defendant entered into a second·contract, by which the plaintiff engaged to do said additional work, and defendant agreed to pay for such further work at the same unit price designated in the first contract of employment, and when no price was designated, defendant agreed to pay a reasonable compensation, viz., the cost to the plaintiff of doing such work, plus the usual and reasonable profit thereon; that, in accordance with the terms and provisions of said second contract, the plaintiff in good faith performed the additional work so agreed upon as designated by defendant's engineers and other employés of defendant corporation, and when said work was completed defendant received and accepted the same; that during the progress of said work the plaintiff rendered detailed statements of his payrolls and costs to defendant; that by reason of the work done, which continued over a period from about August 1, 1925, to October 1, 1927, the defendant was indebted to plaintiff for the sum of $31,973.58, which was the reasonable value of the work performed by plaintiff; and that payment therefor, though demanded, had been refused. Interest on the sum sued for, from October 26, 1927, was claimed.

The defendant, George A. Fuller Company, answered, denying that there was any contract except the original written contract of August 5, 1925, and denied generally the plaintiff's claim, but set up and pleaded as a bar to plaintiff's right of recovery the provisions of the written contract, with reference to the extra work sued for being authorized in writing. Defendant, in its answer, further stated that it had tendered plaintiff $3,467.25 for the work performed under the contract of August 5, 1925, which payment plaintiff had refused to accept; and the answer denied that the extra work for which payment was claimed by plaintiff had ever been authorized by defendant.

The plaintiff, in replying, contended that the provisions of the contract were waived, and that the so-called extra work or overhaul was authorized verbally by the local superintendent in charge of defendant's building operations at Duke University. The defendant corporation filed a rejoinder, denying the matters alleged in the plaintiff's reply.

Upon the foregoing pleadings, the case was tried, with the result that judgment was entered in favor of plaintiff for $3,638.-25, admitted by defendant to be due, and the plaintiff's cause of action as to alleged extra work was dismissed as of nonsuit. The plaintiff appealed, assigning error to the trial court's action dismissing his claim for alleged extra work and directing a nonsuit thereon, and also assigning error to its rulings in the admission and rejection of evidence, and in not submitting the issues between the parties to the jury for determination.

Assignments of error Nos. 1, 2, 3, and 4 are to the court's action in permitting the introduction before the jury of extracts from certain specifications which were part of the contract between Duke University and the defendant. The appellant's exception to the court's action in this respect is without merit. While doubtless the appellant was not bound by the specifications in question in the consideration of the claim for extra work, still to have refused to permit the introduction of the same might have operated prejudicially to the defendant in asserting its defense, and certainly it was not improper to permit them to be introduced with appropriate instructions by the court as to their probative value.

Assignments Nos. 5 and 6 relate to the action of the trial court in not allowing the plaintiff to answer two certain questions propounded to him as follows:

"Q. You were asked yesterday the reason why the overhaul amounting to $24,000.00 as compared with the amount of the contract of $29,500.00, explain why that was?"

"Q. Mr. Teer, what was the actual cost to you for making this overhaul?"
—which the court likewise refused to permit to be answered. These two assignments of error, Nos. 5 and 6, appear to us to be well founded, as the plaintiff should have been afforded the fullest opportunity to make the very explanations called for. The plaintiff's answer, preserved in the record in connection with the ruling on the exception, as under assignment 6, was as follows: "A. The actual cost to me was $23,134.87, which includes 2,285 hours for labor in spreading the dirt on the campus, amounting to $571.-25, and 28 hours use of a ten ton tractor in leveling the dumping ground between the Grand Stand and the Southgate Memorial Building, amounting to $210.00 To this actual cost of $23,134.87 I added my profit of $2,313.58, making the total of $25,448.45 as shown on the itemized statement attached to the complaint." The answer clearly indicates the importance of the information sought to be elicited, as it was manifestly important

to the plaintiff to have the difference between the two bills in question properly explained.

[3] Coming to the consideration of the case upon its merits arising upon the action of the court in withdrawing the same from the jury, and in entering judgment as of nonsuit thereon, the legal questions revolve around the defendant's plea that the plaintiff was barred the right of recovery for the work sued for, because the original contract between the plaintiff and defendant contemplated that such work should only be done upon a written order signed by a properly authorized officer or agent of the defendant, and at prices and terms agreed upon between them.

The law properly applicable to these conditions may be said to be fairly well settled, that is, that provisions for extra or additional work are usually contained in the contract between the parties, and the same should control under ordinary circumstances, but this is not necessarily true, nor universally the case, as that would in effect place the contractual rights of the parties here on a plane as if arising under the law of the land instead of under and by virtue of their contractual undertakings with each other. In determining the rights of the parties, each case has to be dealt with and considered in the light of its peculiar facts and circumstances, having regard to the fact that the questions arise most frequently over, and as the result of, occurrences subsequent to the making of the original contract, and as to which the parties have the right to contract either orally or in writing.

It by no means follows, from the fact that an agreement may be entered into providing only for extras by written consent and approval of the architect in charge, that the parties may not, for reasons satisfactory to themselves, waive or modify their undertakings. In Bartlett v. Stanchfield, 148 Mass. 394, 19 N. E. 549, 2 L. R. A. 625, a contract contained this language: " * * * And that no charge shall be made for extra work or materials, unless the same is ordered in writing, and the price thereof agreed upon." The contract was for the construction of a house, and the plaintiff offered evidence tending to show that extra work was done at the request of the owner. Mr. Justice Holmes, speaking for the court, said: "Attempts of parties to tie up by contract their freedom of dealing with each other are futile. The contract is a fact to be taken into account in interpreting the subsequent conduct of the plaintiff and defendant, no doubt. But it cannot be assumed, as matter of law,

that the contract governed all that was done until it was renounced in so many words, because the parties had a right to renounce it in any way, and by any mode of expression they saw fit. They could substitute a new oral contract by conduct and intimation, as well as by express words. * * * " In 6 R. C. L. pp. 914 and 915, it is said: "Moreover, though the parties to a contract may stipulate that it is not to be varied except by an agreement in writing, they may, by a subsequent contract not in writing, modify it by mutual consent. One who has agreed that he will only contract by writing in a certain way does not thereby preclude himself from making a parole bargain to change it. There can be no more force in an agreement in writing not to agree by parole than in a parole agreement not to agree in writing, and every agreement of that kind is ended by the new one, which contradicts it."

In Illinois Cent. R. Co. v. Manion, 113 Ky. 7, 67 S. W. 40, 101 Am. St. Rep. 345, the court said: " 'Though the written contract has a clause forbidding such oral alteration, and declaring that no change in it shall be valid unless in writing, such provision does not become a part of the law of the land; it is like any other agreement which is superseded by a new one. So that in spite of it an oral alteration may be validly made.' * * * 'Any contract may be varied by the parties before performance; for the power from the law to enter into the bargain equally authorizes them to abrogate or modify it.' "

In Wyandotte & D. R. Ry. v. King Bridge Co., 100 F. 197, 40 C. C. A. 325, in which case Judges Taft, Lurton, and Day sat, it was decided that a provision in a contract to build a bridge according to certain plans and specifications, which states that no extra labor or material shall be paid for, unless agreed to in writing, does not deprive the contractor of the right to recover for additional work or material furnished outside of the contract at the request of the owner though not agreed upon in writing.

In United Steel Co. v. Casey, 262 F. 889, a decision of the Circuit Court of Appeals of the Sixth Circuit, it was decided that a provision in a contract for excavating, grading, backfilling, and concreting, that no extras would be allowed without an understanding and written order does not prohibit the making of a parol contract changing the compensation to be paid for the work and material covered by the written contract, but such a provision is a fact to be

considered by the jury in passing upon whether a parol agreement was made or not.

Citation of authorities could be given almost without number to support the views expressed herein, but only the following cases, two from this court and two from the Supreme Court of the United States, in addition to those named, need be especially mentioned: The Sappho (C. C. A.) 94 F. 545, 547, 550, 551; Schmulbach v. Caldwell (C. C. A.) 196 F. 16, 23, 24; Piatt's Administrator v. U. S., 89 U. S. (22 Wall.) 496, 506, 22 L. Ed. 858; Wood v. Ft. Wayne, 119 U. S. 320, 321, 7 S. Ct. 219, 30 L. Ed. 416. A careful review of these four cases, with the citations therein contained, will make clear the law properly applicable in the present case.

In the conclusion reached by us, we have given due consideration to the able and interesting arguments of counsel for appellee, and we have also examined with care the authorities cited, but from our view of this case, they do not seriously alter or militate against the views expressed herein, under the special facts and circumstances existing here.

The appellant's seventh assignment of error is to the action of the trial court in sustaining the motion made by the defendant for judgment as of nonsuit, which was first made at the conclusion of the evidence introduced by the plaintiff, and was then overruled by the court, and renewed at the conclusion of all the testimony, and then sustained by the court. This motion for nonsuit was made under the North Carolina statute known as the Hinsdale Act (Consolidated Statutes of North Carolina, § 567). This act has frequently been the subject of review by the North Carolina state courts (Roscoe v. Lumber Co., 124 N. C. 42, 32 S. E. 389; Gates v. Max, 125 N. C. 139, 34 S. E. 266; Snider v. Newell, 132 N. C. 614, 44 S. E. 354), and any number of decisions might be cited. The effect of a motion for judgment as of nonsuit is that of a demurrer to the evidence, and the same should be so considered and treated, that is, the demurrant waives all objections as to the competency of the evidence and admits as true that which it tends to prove; and for the purposes of the motion the evidence should be taken most strongly against the demurrant.

From our view of the case, we are of the opinion that the trial court erred in its action and ruling sustaining the motion for nonsuit, and that, instead of so doing, the motion should have been overruled and a jury trial awarded, as well as to the sufficiency of the evidence to establish the right of the plaintiff to recover for the additional work sued for, as for the amount recoverable therefor. To our mind the testimony was such as to clearly warrant the consideration and determination of the facts by the jury, and it was error on the part of the trial court to deny the plaintiff this right, and, in place thereof, to sign and enter its judgment thereon, as set out in the record.

Reversed and remanded to the District Court at the cost of appellee, with directions to award a new trial in accordance with the views herein expressed.

Reversed and remanded.