## NEW YORK ALASKA GOLD DREDGING CO. v. WALBRIDGE.*

### No. 7239.

Circuit Court of Appeals, Ninth Circuit.
April 8, 1935.

*Rehearing denied May 22, 1935.

Harry E. Pratt, of Fairbanks, Alaska, and Herman Weinberger, of San Francisco, Cal., for appellant.

Chas. E. Taylor, of Fairbanks, Alaska, and John L. McGinn, of San Mateo, Cal., for appellee.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

This action was brought by appellee, Walbridge, against appellant, the New York Alaska Gold Dredging Company, hereinafter referred to as the company, to recover approximately $19,000, representing unpaid salary at the rate of $600 per month for services rendered as superintendent and general manager of the company from March 1, 1923, to January 5, 1928. This is a second appeal in this case. A former appeal is reported in (C. C. A.) 38 F.(2d) 199, 202. On that appeal this court held that the trial court erred in directing a verdict in favor of Walbridge, and should have submitted to the jury the question whether the salary of $600 per month, which was fixed by resolution of the board of directors of the company dated March 21, 1922, had been altered by subsequent agreement of the parties providing for a salary of $300 per month and an additional $300 per month in the event the company attained a self-supporting and dividend paying basis. The opinion upon that appeal says:

"We think the question as to whether or not the original contract between the parties was modified by the subsequent agreement, express or implied between the parties, should have been left to the jury under proper instructions; that the resolution of March 21, 1922, did not have the effect of in any wise limiting the power of the corporation or its officers to deal with the appellee regarding the terms of his employment and compensation therefor."

We are concerned upon this appeal only with the claim for salary. With respect thereto, the complaint alleges that on March

21, 1922, by resolution of its board of directors, the company employed appellee as its general manager at a salary of $600 per month, to commence April 1, 1922, "and to continue until canceled by action of the board of directors"; that appellee was continuously so employed from April 1, 1922, to January 5, 1928, when his employment terminated; that during said period appellee earned a total of $41,400, of which sum the company paid $21,987.13, leaving a balance unpaid of $19,412.87, for which amount, with interest, judgment was prayed.

The answer admits that appellee was employed as general manager of the company at a salary of $600 per month commencing April 1, 1922, and admits that he worked as general manager from April 1, 1922, to March 1, 1923, but denies that he was employed by the company from March, 1923, to March, 1924, and alleges that from March, 1924, to April, 1925, appellee rendered his services to the company gratuitously; and that from May, 1925, to the termination of his employment in January, 1928, he was working for $300 per month and not $600 as claimed. The periods of time in controversy may be summarized more fully as follows:

(1) March 1, 1923, to March 1, 1924. The company claims that appellee was not in its employ during this period.

(2) March 1, 1924, to April 30, 1925. The company admits that appellee was in its employ during this time, but claims that he had agreed to work during this period without compensation.

(3) May 1, 1925, to January 5, 1928. Appellee's employment during this period is admitted, but the company claims that he agreed to work during this time for $300 per month and an additional $300 per month "if and when defendant company should become self-supporting and upon a dividend paying basis"; which financial condition did not materialize.

After trial before a jury, a verdict was rendered in favor of appellee for $19,412.87, with interest, the full amount of salary claimed, as follows: $7,700 for the period ending March 1, 1924; $8,068.46 from March 1, 1924, to April 30, 1925; $7,731.98 from May 1, 1925, to January 5, 1928; less the amount of $4,087.57, admittedly due the company as an offset against appellee's claim for salary.

The sufficiency of the evidence to support the verdict and judgment is not questioned. The assignments of error relate principally to alleged prejudicial rulings of the court excluding certain evidence offered by the company and admitting evidence offered by appellee relating to the amount of salary to which appellee was entitled. The instructions to the jury are also challenged, and likewise the refusal to give certain instructions proposed by the defendant. For a proper understanding of the questions presented, a detailed statement of the facts, together with the testimony of certain witnesses, is necessary.

Appellee testified that he went to Alaska in March, 1921, to investigate some property for a New York syndicate. He found land on the Tuluksak river which he believed to be good dredging ground and caused it to be staked. He returned to New York in the fall of 1921 and caused the appellant company to be organized for the purpose of mining for gold on the land so staked. He was a director and vice president of the company from the time of its organization until January, 1926. In November, 1921, the board of directors of the company adopted a resolution appointing him general manager, at a salary of $5,000 per year, and on March 21, 1922, the board adopted a second resolution increasing his salary as general manager to $600 per month, commencing April 1, 1922, "to continue until canceled by action of the board of directors." In March, 1922, he went to Alaska, and being unfamiliar with mining, he took Ralph Hirsh, a mining engineer, with him, together with drills and supplies. He remained in Alaska until March, 1923, and during that time his salary of $600 per month was paid to his wife, on his instructions. When appellee returned to New York in March, 1923, the company was without funds. He induced Milton S. Dillon and Oswald Fowler to purchase 3,300 shares of stock in the company for $16,600. At that time Dillon was a director of the company, and at a meeting of the board of directors in April, 1923, Dillon was elected secretary and treasurer, which office he held continuously thereafter. Fowler was also elected a director at that meeting.

Inasmuch as the money from the sale of the 3,300 shares of stock was insufficient to carry on operations for long, it was agreed at the meeting of the board of directors in April, 1923, that Hirsh, the mining engineer, should go to Alaska and appellee should remain in New York to promote the proposition. Appellee testified that he devoted his time and efforts to raising funds,

and that he succeeded in raising about $250,000 through the sale of stock in the company. The raising of finances for a mining venture ordinarily is of paramount importance, and is compensated for. However, according to the testimony of Dillon and Fowler, on behalf of the company, appellee performed no other services for the company during this period (March, 1923, to March, 1924). Dillon also testified that appellee made no demand for salary and none was paid him for that period; but appellee testified that he did make such a demand. The company does not challenge the sufficiency of the evidence to justify the finding of the jury awarding appellee his salary at $600 per month for the period in question from March, 1923, to March, 1924, but does challenge certain instructions given by the court to the jury relating to the existence of an alleged agreement between the parties that appellee would receive no salary for this period, contending that the instructions as given were erroneous and that certain instructions proposed by the defendant on this issue should have been given. The proposed instructions are not included in the bill of exceptions and therefore we cannot consider the assignments relating to the refusal to give them. "Bills of exception must contain instructions given or refused, otherwise error predicated thereon will not be considered, notwithstanding the assignment of errors sets out such instructions." 6 Cyc. Fed. Proc., § 2812, p. 267. See, also, Chicago Great Western R. Co. v. Le Valley (C. C. A. 8) 233 F. 384, 387; Beach v. United States (C. C. A. 9) 35 F.(2d) 837. However, the instructions given are correct and embrace substantially, if not fully, the claimed instructions requested.

Consideration will now be directed to the period in controversy from March 1, 1924, to April 30, 1925, during which time the company claims appellee agreed to render his services gratuitously. In March, 1924, appellee returned to Alaska and remained there until September of that year. He testified that sufficient development work had been done to justify the installation of a dredge and that, with data showing averages and values, he went to San Francisco and there consulted mining and dredge men. He returned to New York late in 1924, and laid before the board of directors of the company all his information and data, and, as a result, a contract for the construction of a dredge was executed. Appellee also testified that prior to his departure for Alaska in March, 1924, Dillon had promised him that there would be plenty of money to pay his salary, and it would be paid to his wife. According to the testimony of Dillon and Fowler, on behalf of the company, appellee went to Alaska in March, 1924, pursuant to an agreement that he would make the trip without salary and at his own expense. Dillon's testimony to this effect is as follows:

"At the meeting of the board of directors of the defendant company on the 6th of February, 1924, in the company office in New York City, the plaintiff Walbridge stated to the board that he wished to be sent to Alaska, and upon it being pointed out to him that the finances of the company did not permit the payment of salary and expenses, he stated to the board that as his stock interest was the largest, it was imperative for him to go to protect his own interest and that he would go at his own expense without salary, and this was agreed to by the board.

"This agreement does not appear upon the minutes of the board meeting. It did not appear to me necessary to load the minutes up with matters which were agreed to by the board and Mr. Walbridge. * * *

"During the period from March, 1924, to March, 1925, I paid him $231.54 to pay insurance and $200.00 for family expenses, and also $100.00 to his wife. I made these payments as advances, as the reports from Alaska were good and I knew Walbridge would have to go to Alaska the next year and would have salary coming.

"During the period from March, 1924, to March, 1925, Walbridge did not make any demand for the payment of any sum to him from the company."

Fowler also testified that appellee was not on a salary during the year in question, as follows:

"At the directors meeting in February of 1924, there being present Milton S. Dillon, Lester B. Walbridge, Mr. Grubb, Mr. McQuoid, Stanley Smith and myself, Lester B. Walbridge asked that he be allowed to go to Alaska in order to protect his interests. We brought out that the company could not afford to pay him a salary or finance him but he said he was willing to go up at his own expense. We concluded that he was to be allowed to go to Alaska at his own expense and he did go to Alaska in the spring of 1924 and returned in the fall of 1924."

Dillon also testified that in the winter of 1924, after appellee's return from Alaska, they had a conversation in which appellee stated to the witness and to Fowler that "he could no longer give his services gratis to the company" and that if he returned to Alaska he would have to have a salary.

Error is assigned to a ruling of the court limiting the cross-examination of appellee on the issue of gratuitous services during the period in question, and to a ruling admitting in evidence a letter from Dillon to appellee's wife, which letter tends to support appellee's claim for salary during this period. Those questions will now be considered.

Appellee had denied on his direct examination that he had agreed to go to Alaska in 1924 without salary, and repeated the denial on cross-examination. The following question was then asked him:

"Isn't it a fact that at the time of the board meeting, it might have been either before the board was officially called, or during the board meeting, or just before the board meeting, at the office of the company in New York about the 6th of February, 1924, at a time Mr. Fowler was there, Mr. Dillon, Mr. Grubb, at which time it was stated that the company didn't have money enough to pay you any salary, and you asked to go to Alaska, and they stated they could not pay you any salary, and you stated it was imperative that you should go on account of your stock interest and that you had to go up there to protect your own stock interest, and that you would be willing to go up without salary?"

The question was objected to on the ground that it was not the best evidence, that it was not cross-examination, and that it was seeking to vary the terms of a written instrument (referring, apparently, to the resolution of the board fixing appellee's salary at $600 per month). Counsel for the company then stated:

"He (Walbridge) has testified to his contract being a certain thing, and I am trying to show that it was not; that his own statements were to a different effect; in fact, that the statements made constituted a different contract with reference to his going to Alaska that year,—a new contract with the company, with the officers of the company.

"The Court: You are seeking to show a new contract at this time?

"Yes, your Honor.

"The Court: I will sustain the objection as part of your case in chief and not proper cross examination."

The sustaining of the objection was error. In view of other testimony, both for appellant and appellee, it is unnecessary to determine whether or not the refusal to permit the cross-examination of the appellee was prejudicial. On its case in chief the company introduced depositions covering the matter embraced in the question. This is admitted in its brief as follows:

"The three persons mentioned in said question as having been present at the meeting were Messrs. Fowler, Dillon and Grubb. Each of them stated in his deposition that the meeting occurred and the discussion was had as stated in the above question, and no objection was made to their testimony."

In corroboration of his testimony that he was not working without compensation during the period in question, and for the purpose of showing an admission on the part of the company that he was on a salary, appellee offered and the court admitted in evidence over the objection of the company, the following letter from Dillon to appellee's wife, dated April 11, 1924:

"Your letter of April 6th received. I am sorry to say that at present the company's balance does not warrant me sending you a check for Lester's salary. You understand, of course, that this salary is not due and payable unless and until the property in Alaska literally 'pans out,' or unless there is sufficient balance.

"If at any time the present situation changes, I shall immediately communicate with you."

The objection interposed to the introduction of this letter was as follows:

"The defendant objected to said letter on the ground that it was incompetent, irrelevant and immaterial, not a letter from the corporation at all but from an individual— not a letter addressed to the plaintiff but to plaintiff's wife and that it was a letter which had never been shown the writer and that its only purpose could be for impeachment."

It is contended that the admission of this letter of April 11, 1924, and the exclusion of another letter offered in evidence by the company (letter of March 21, 1925, hereinafter referred to), constitutes reversible error. The specific argument now directed against the admission of the letter of April 11, 1924, is stated in the brief as follows:

"This letter was not admissible at all because it was not shown to the witness Milton S. Dillon nor to his attorney during his cross examination at the time his deposition was taken in New York. * * * This failure to exhibit the instrument at the time of the deposition deprived Dillon of the opportunity of explaining it and was in violation of the Alaskan Statute. (Sec. 1502, Compiled Stats. of Alaska.) It is obvious that the purpose of introducing this letter was to impeach Dillon's testimony that $300 of Walbridge's salary was contingently withheld by showing that he had committed himself in writing contrary thereto. The admissions of this letter would have no other effect than to impeach Dillon and for that reason was most damaging to the company's case. * * *"

This argument misconceives the purpose for which the letter was introduced. At the trial appellee's counsel stated that he was offering the letter, not as impeachment of Dillon, but as "an admission that at the time they were not able to pay him the money." In other words, an admission that the money was in fact owing to appellee from the company; or, an admission that appellee was in fact working for a salary during this period and was not rendering his services gratuitously, as claimed by the company. The letter, therefore, could not have the impeaching effect claimed by the company. Moreover, the letter is dated a year prior to the formation of the contingent salary agreement to which Dillon testified and therefore could not have had any effect with reference to that agreement.

We turn now to a consideration of the controversy over the amount of salary to which appellee is entitled for the remaining period of his employment, namely, May 1, 1925, to January 5, 1928. The company claims that so far as this period is concerned, the original salary agreement calling for $600 per month was altered by subsequent oral agreement of the parties entered into at a meeting of the board of directors in February, 1925, and that under the modified, or new agreement appellee was to receive, commencing May 1, 1925, $300 per month and an additional $300 per month if and when the company attained a self-supporting and dividend paying basis. On the other hand, appellee claims that the resolution of the board of directors of March 21, 1922, fixing his salary at $600 per month, is the sole agreement, oral or written, between him and the company in regard to

his employment and salary, except that there was also a later and new agreement to the same effect but changing the manner of payment of the $600 monthly salary. This later agreement it is claimed on the part of appellee is evidenced by a letter from Dillon to appellee, dated April 13, 1925, just prior to appellee's departure for Alaska. It reads as follows:

"New York-Alaska Gold Dredging Co.,
"New York, N. Y., April 13th, 1925.
"Lester B. Walbridge, 180 Argyle Road, Brooklyn, N. Y.

"Dear Sir: According to our understanding, beginning May 1, 1925, you are to receive $300. per month, which is to apply against your salary of $600 per month. The balance to accrue to your credit on the books of the company.

"New York-Alaska Gold Dredging Co.,
"By M. S. Dillon, Sect'y & Treas."

Appellee places much reliance on this letter, contending that it constituted a new contract of employment by the terms of which he was thereafter entitled to a salary of $600 per month, $300 in cash and $300 to accrue to his credit on the books of the company. The trial court concurred in this interpretation of the letter and instructed the jury accordingly, and also excluded evidence offered by the company that half of appellee's salary, after May 1, 1925, was payable only if and when the company realized profits.

The position of the company is reflected by the testimony of Dillon, who testified to a conversation between himself and Fowler and appellee in which, according to his testimony, it was agreed that commencing May 1, 1925, appellee would receive a salary of $300 per month plus a contingent salary of $300 per month if the company became self-supporting and on a dividend basis. Dillon testified that:

"It (the conversation) was in February, 1925, I believe, in my office, and Mr. Fowler was present and possibly Mr. Clay. Mr. Walbridge brought up the question of salary and he, Oswald Fowler and I being the three largest stockholders of the company, it was determined that he was to have $300.00 a month, which was to be payable to his wife and $300.00 a month was to be held as a contingent salary subject to the company becoming self-supporting and paying dividends."

Dillon then testified that on April 13, 1925, appellee presented to him for his (Dil-

lon's) signature the letter of that date, above set forth, and, continuing, testified as follows:

"I said I would sign this letter provided he would sign another which I would dictate, because I did not consider that his letter showed the exact agreement between the company and himself. I signed the letter. Then immediately after signing it, I called my stenographer and dictated a letter for Walbridge to sign. It was addressed to me as Treasurer of the defendant company. I drew the letter to be dated March 21, 1922, to cover the time from the passage of the resolution authorizing his salary at $7,-200.00 a year. I had forgotten at the time I dictated this letter, however, that Walbridge had not been in the employ of the company in 1923 and had rendered his services gratuitously in 1924. Therefore when the letter was presented to me by my stenographer I took a pen in the case of the original and a pencil in the case of the carbon copy—there was a carbon copy of the letter —and changed the date of March 21, 1922, to March 21, 1925. I did not, however, have time to change the form of the letter. I presented the letter to Walbridge and he signed the original thereof. The letter which he signed, I placed in my files where I keep the contracts of the defendant company. The carbon copy of that letter I placed in a different file. I have searched diligently for the original of that letter but cannot find it. I remember last seeing it sometime during the summer of 1927. Mr. Walbridge had access to the file where that original letter was kept during the fall of 1927. The carbon copy of that letter I here produce."

The carbon copy reads as follows:

"With the purpose of clarifying the situation with respect to my salary, I hereby state that my salary was determined by the Board of Directors at a duly held meeting on March 21, 1922, to be the sum of $7,200 per year payable in installments of $600.00 per month. It was, however, understood that I should be entitled to only $3,600 per year payable in installments of $300.00 per month until such time as the company was on a sound financial basis and paying dividends. All of which was agreed to by me."

The copy of the letter was offered in evidence and excluded by the court for the reasons set forth in the following objection interposed by appellee:

"It is a letter that was originally dated March 21, 1922. Of course, it was never signed by Mr. Walbridge. They don't produce the original of it. But it was dated March 21, 1922, and the '2' is stricken out and '5' is added—written over it. What does it seek to clarify? Not the agreement of April 13, 1925, but the resolution of March 21, 1922, which needs no clarification, and they seek by this instrument to vary the terms of the original agreement that was entered into between these parties upon which they acted, and, so, we submit it is not admissible for any purpose, because they claim that the agreement that was entered into on March 21, 1922, was terminated on the first day of March, 1923, which agreement had been fully executed and they had acted on it. He worked for months and received $600 a month, and now by this instrument they undertake to say that according to the terms of the original agreement he was only to receive $300 a month. I submit that the exhibit cannot throw any light upon the contract which was signed, and that it does not tend to explain, change or modify it in any way."

It will be noted that the objection was not on the ground that the letter was an attempt to vary the terms of the new agreement between the parties as evidenced by the letter of April 13, 1925, above quoted, but was on the ground that it was an attempt to vary the terms of the original salary agreement between the parties, evidenced by the resolution of the board of March 21, 1922.

The exclusion of this letter is the basis of the principal assignment of error urged by the company, but there are numerous kindred assignments challenging rulings of the court refusing to allow other witnesses (directors and employees of the company) to testify that during 1925 and thereafter appellee had admitted to them he was working for a salary of $300 per month plus an additional contingent salary of $300 per month if and when the company became self-supporting. The conversations with these witnesses which occurred prior to April 13, 1925, were excluded on objection of appellee that "all conversations prior to the 13th of April, 1925, were merged in the writing of that date and that parol evidence was not admissible to vary the terms thereof," and the conversations subsequent to that date were excluded on objection "that it was seeking to vary the terms of a written contract." The record does not disclose whether the "written contract" sought to be protected was the resolution of

March 21, 1922, or the letter of April 13, 1925.

We will first consider the admissibility of the excluded letter, dated March 21, 1925. Appellee contends that this letter, as well as the testimony of the other witnesses relating to the alleged $300 contingent salary agreement, were properly excluded under the parol evidence rule as an attempt to vary the terms of the letter of April 13, 1925, calling for a salary of $600 per month. The terms of this letter appellee contends "are clear and unambiguous" and "its language is positive and certain," and "it is within the parol evidence rule." It will be remembered, however, that the objection interposed at the time the letter was offered was that it was an attempt to vary the terms of the resolution of March 21, 1922, and not the letter of April 13, 1925. The objection as interposed should have been overruled, inasmuch as the parol evidence rule does not apply so as to exclude evidence of subsequent oral agreements changing the terms of a written agreement. The court therefore erred in applying it so as to exclude evidence of a subsequent agreement to that effect by the letter which the company attempted to introduce. Grandin v. United States, 22 Wall. 496, 22 L. Ed. 858, 860; 22 C. J., § 1693, p. 1273; 10 R. C. L. 1033; Federal Law of Contracts, §§ 355, 357. We so held, in effect, on the appeal arising out of the first trial, at which trial the letter in question was in evidence. In our previous opinion, after referring to evidence of "an agreement with officers of the corporation which postponed at least half his salary to some future date, or made that half of it wholly contingent upon the success of the corporation," we said: "We think the question as to whether or not the original contract between the parties was modified by the subsequent agreement, express or implied between the parties, should have been left to the jury. * * *" We are also of opinion that the letter offered by the company would have been admissible over an objection that it was an attempt to vary the terms of the letter of April 13, 1925. It is undisputed that the letter in question, dated March 21, 1925, was in fact written, if written at all, on April 13, 1925, the same day and at the same time that the letter of that date relied upon by appellee was signed by Dillon. Under these circumstances, the excluded letter was admissible under the rule that papers executed at the same time and relating to the same subject-matter should be construed together, and it is permissible to contradict or vary the effect of one of such papers by what is contained in the other, "and where two such papers differ in a certain particular, extrinsic evidence is admissible to show which paper expresses the true agreement of the parties." 22 C. J., § 1646, p. 1233. We cannot agree with appellee that the letter of April 13, 1925, upon which he relies, is arbitrarily entitled to the sweeping protection of the parol evidence rule. We cannot construe this letter as a complete contract. On the contrary, the opening words thereof—"According to our understanding"—imply, as contended by the company, that it was "merely a memorandum referring to a prior oral contract between the parties." Accordingly, the rule as stated in 22 C. J., § 1512, p. 1132, is apposite:

"The parol evidence rule may protect letters from variation or contradiction where they are of a contractual nature, containing promises, propositions, undertakings, representations, and the like, especially where it is intended that the receiver shall act upon the faith of the contents of the letter; but if the letters show the contract to be incomplete, either in the proposition made or in its acceptance, parol evidence may be resorted to for the purpose of showing the exact terms of the contract. So, also, where a letter does not purport to be a complete contract, but on its face professes to be merely a recitation and confirmation of an oral agreement, such oral agreement, and not the letter, constitutes the real agreement between the parties, and such contract may be shown by parol."

See, also, Silverthorne v. McFarland (C. C. A. 4) 266 F. 60.

It is also well settled that when the meaning of a contract is not clear, the situation of the parties and the surrounding circumstances at the time of the making of the contract are to be taken into consideration. Drainage Dist. No. 1 v. Rude (C. C. A. 8) 21 F.(2d) 257, 261; Gill v. Benjamin Franklin Realty & Holding Co. (C. C. A. 3) 43 F.(2d) 337, 338; 22 C. J., § 1570, p. 1173.

Under all of the circumstances the court was not justified in treating the letter of April 13, 1925, as conclusive on the question of salary for this period, and in applying to it the protection of the parol evidence rule.

For these reasons, we hold that the court also erred in excluding the testimony of the witnesses called to testify to conversations with appellee regarding the alleged $300 contingent salary agreement. This evidence was admitted on the first trial, and in view of our reversal of the judgment entered upon that trial for failure to submit the issue of a modified salary agreement to the jury, it should not have been excluded upon retrial. The effect of the court's rulings was to deprive the company of its principal defense to the action and requires a reversal of the case.

The remaining assignments of error relate to certain instructions to the jury. It is unnecessary to discuss them because the errors complained of therein resulted from the errors in excluding the evidence to which we have referred.

Judgment reversed and cause remanded for new trial.