# WOOD *v.* FORT WAYNE.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

Argued November 16, 1886. — Decided December 6, 1886.

In this case, the court construed the language of a written contract for supplying materials and labor in constructing water works for the city of Fort Wayne, Indiana, in regard to extra work, and an increase in the quantity of work, caused by an alteration of plan; and in regard to defects in materials furnished by the city, causing delay and expense to the contractor; and reversed the judgment of the Circuit Court because of an erroneous construction by it of such language.

This was an action brought by plaintiffs in error (who were plaintiffs below) to recover from defendant the cost of certain materials and work connected with the furnishing and laying of water pipes for the water works of the city. The case is stated in the opinion of the court.

*Mr. John Rodman Paul* and *Mr. George W. Biddle*, for plaintiff in error, cited: *Springfield* v. *Harris*, 107 Mass. 532; *Dermott* v. *Jones*, 23 How. 220; *Dermott* v. *Jones*, 2 Wall. 1; *Manufacturing Co.* v. *United States*, 17 Wall. 592; *Adams* v. *Cosby*, 48 Ind. 153; *Shillington* v. *Templeton*, 66 Ind. 585; *Dubois* v. *Del. & Hud. Canal Co.*, 12 Wend. 334; *Bestor* v. *United States*, 3 C. Cl. 425; *Messenger* v. *Buffalo*, 21 N. Y. 196; *Emerson* v. *Slater*, 22 How. 28; *Canal Co.* v. *Ray*, 101 U. S. 522; *Munroe* v. *Perkins*, 9 Pick. 298; *S. C.* 20 Am. Dec. 475; *Williams* v. *Bank of United States*, 2 Pet. 96; *Swain* v. *Seamens*, 9 Wall. 254; *Ins. Co.* v. *Norton*, 96 U. S. 234; *Ins. Co.* v. *Eggleston*, 96 U. S. 572; *Ins. Co.* v. *Doster*, 106 U. S. 30; *Rhodes* v. *Thomas*, 2 Ind. 638; *Bates* v. *Dehaven*, 10 Ind. 319; *Billingsley* v. *Stratten*, 11 Ind. 396; *Smith* v. *Gugerty*, 4 Barb. 614; *Grant* v. *United States*, 5 C. Cl. 71; *Wolcott* v. *Wolcott*, 19 Vt. 37; *Jefferson County* v. *Slagle*, 66 Penn. St. 202; *Heald* v. *Cooper*, 8 Maine, 32.

*Mr. L. M. Ninde,* for defendant in error, cited: *Crosby* v. *Wood,* 6 N. Y. 369; *Reynolds* v. *Nugent,* 25 Ind. 328; *Bartlett* v. *Wyman,* 14 Johns. 260; *Deacon* v. *Gridley,* 15 C. B. 295; *Mallalien* v. *Hodgson,* 16 Q. B. 689; *Conover* v. *Stillwell,* 34 N. J. L. (5 Vroom), 54; *Cobb* v. *Cowdery,* 40 Vt. 25; *Ford* v. *Garner,* 15 Ind. 298; *Runnamaker* v. *Cordray,* 54 Ill. 303; *Ingle* v. *Jones,* 2 Wall. 763; *Clark* v. *New York,* 4 N. Y. 338; *S. C.* 53 Am. Dec. 379.

Mr. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought October 26th, 1881, in the Circuit Court of the United States for the District of Indiana, by Richard Wood and others, partners, doing business as R. D. Wood & Co., in Philadelphia, Pennsylvania, against the city of Fort Wayne, a municipal corporation in Indiana, to recover damages for the alleged breach by the latter of a written agreement made between it and the plaintiffs, on the 10th of September, 1879, in reference to the construction by the latter of water works in the city of Fort Wayne. The agreement was made between the city, by its "trustees of water works," of the first part, and R. D. Wood & Co., of the second part, and bore the seal of the city, and the statement that it was "approved by the City Council, September 15th, 1879," signed by the clerk.

By the contract, the party of the second part agrees, for the consideration mentioned in it, "to do all the work and furnish all the materials called for by this agreement, and in strict accordance with the specifications and requirements as hereinafter set forth. And that the said city shall have the right to appoint such civil engineer, and inspectors under him, as the trustees of water works may deem advisable; and that said engineer shall determine the amount of work and materials to be paid for under this contract, decide all questions relative to the execution thereof, and his estimate and decision shall be final and conclusive. The whole to be in accordance with the preceding proposal signed by the said second party, and conformably to the following specifications, both of which

are to be mutually considered, as to all expressions, intents, and purposes, as a part of this contract."

The material parts of the agreement, out of which the questions involved in the suit arise, are as follows :

"Specifications. The work to be done consists in furnishing . . . cast-iron water-pipes," some "of sizes ranging from 24 inches to 4 inches diameter; . . . also, in trenches, laying pipes and special castings, including back filling, setting valves, constructing and setting valve-boxes, vaults and covers, and setting hydrants, including all crossings of rivers and canals. . . .

"The delivery of the pipe shall commence on or before the first day of October, 1879, and be continued with regularity until the completion of the contract, which shall be on or before the first day of June, 1880. Special castings shall be delivered as may be required by the engineer. . . .

"Pipe-laying will consist in excavating and refilling trenches; in taking up and replacing pavements or other surfaces; in hauling and laying pipes, setting special castings, stop-cocks, air-cocks, check-valves, hydrants, and all other appurtenances incident to the pipe distribution; in cutting pipes, making joints, preparing foundations, building brick or stone vaults, blow-off wells; in repairing damages caused to gas-pipes, sewers, drains, and cisterns; in clearing the streets and grounds of all rubbish or refuse caused by the above work; in furnishing lead and gasket for joints, fuel for melting lead, clay and rope for bands, blocks and wedges for use under pipes, wrought-iron straps for securing caps, reducers, and other parts liable to draw; in furnishing and setting or constructing boxes or vaults for stop-cocks, air-cocks, man-holes, including furnishing and fitting cast-iron frames and covers thereto; in furnishing sand and all other materials for masonry, and all tools and labor necessary for the complete fulfilment of this contract. . . .

"The above work to be done in the city of Fort Wayne, Indiana, along the lines and in the streets, as indicated on the distribution map in the office of the trustees or city engineer's office, and in such other streets and places in said city as may

be directed. The trenches for the pipes shall be opened in accordance with the lines and grades as given or directed by the engineer. . . .

"All pipes, special castings, stop-cocks, air-cocks, check-valves, and hydrants will be furnished to the contractor in the city pipe-yard, or on the cars upon which they are received from the foundry. They will be delivered to him as soon as received, and it shall be his duty to notify the engineer of any defects or breakage before removal from cars; otherwise, all damage arising from such cause shall be made good by said contractor. The contractor shall have no claim upon the city for any delay in the delivery of pipes or other materials from the manufacturers. . . .

"Stop-cocks, air-cocks, hydrants, special castings, and all other parts pertinent to the supply or distribution, shall be set or laid at the required points in such manner as the engineer may direct. . . .

"A box or vault, of wood or masonry, shall be furnished and set over each of the stop-cocks, and over each of the air-cocks and man-hole pipes, and the iron frames and covers shall be properly fastened to them. These boxes are to be made of the form and dimensions shown on the plans furnished, and approved by the engineer. . . .

"And the said party of the second part hereby agrees to receive, and the said first party hereby agrees to pay, the following prices as full compensation for the work contemplated in this contract:

"(1.) For laying the pipes and all special castings appertaining thereto, setting check-valves, stop-cocks, and air-cocks, including the excavation and refilling of trenches; all bailing, and shoring, and ramming; the taking up and replacing paving or other surface of the streets; the removal of all rejected or surplus materials from the grounds or streets; the repairing of damage caused to gas-pipes, sewers, drains, streets, cisterns, etc.; and the expense of avoiding such obstructions; the hauling of all pipes and other castings and appurtenances on to the grounds, and returning those not used to the pipe-yard; the furnishing of all blocks and wedges, and all materials for

making the joints; the cutting of pipes; and all other expenses of materials, tools, and labor required by the specifications and incident to this particular work; the lengths to be measured along the centre of the pipe, and in the case of branches as starting from the centre of the main pipe — twenty four inch pipe — the sum of sixty (60) cents per lineal foot. . . .

"(5.) For furnishing and setting all wooden stop-cock and air-cock boxes, including fitting and securing the iron covers, the sum of —— each; cost is included in price for pipe laying. . . .

"And it is hereby agreed that no claim for extra work shall be made or entertained, unless such extra work shall have been done in obedience to a written order of the engineer and trustees, and a stipulated price for same agreed upon, whenever such stipulation may be practicable. When otherwise, such claims to be made to the trustees in writing within ten days after the completion of such extra work, or before the payment of the next succeeding monthly estimate after such work is done, failing to do which all rights of the contractor to such extra pay shall be forfeited. . . .

"The said trustees shall have the right to make any alterations in the extent, dimensions, form, or plan of the work contemplated by this contract, either before or after the commencement of construction. If such alterations diminish the quantity of work, the price paid shall be proportionately diminished, and no anticipated profits allowed for the work omitted. If they increase the work, such actual increase to be paid for at contract rate for work of its class.

"All loss or damage arising out of the nature of the work aforesaid, or from the action of the elements, or from any unforeseen obstructions, or any difficulties that may be encountered in the prosecution of the same, also for all expenses which may be incurred in consequence of the temporary suspension of any part of said work, shall be incurred by the contractor without extra charge to said city."

The complaint sets forth a compliance by the plaintiffs with the contract, and the completion of the work September 1st, 1880, and the failure of the defendant to pay to them $4179.75 allowed by the contract to be retained by the defendant until six months after the completion of the work.

It also avers, in its second paragraph, that, before the con-
tract was made, two agents of the plaintiffs were shown by
the trustees a distribution map in the office of the city engi-
neer, as indicating the lines and streets on which the pipes
were to be laid, from which to make their bid for the work;
that, before making their bid, they examined the map, and
found that the main pipe leading from the pumping works to
the reservoir was to cross the St. Mary's River on the line of
Calhoun street; that they thereupon carefully examined the
river-bed in the Calhoun-street line, and estimated that the
crossing of the river at that place would cost only $500,
which was a correct estimate of such cost; that the bid of the
plaintiffs for the work and the contract was made with ex-
press reference to the crossing of the river at that place; that
the contract expressly refers to such distribution map as show-
ing the lines and the streets on which the work was to be
done, it being the only distribution map then on file in the
office of the trustees or in that of the city engineer; that, as
the plaintiffs were about commencing the work, their agents
were informed by the trustees and the engineer, that they had
changed the plan of the work so as to make the crossing of
the river on the line of Clinton street instead of Calhoun
street, and the plaintiffs were ordered to make the crossing at
Clinton street; that the plaintiffs, after their agents had
examined the river-bed at the Clinton-street crossing, and had
found that the water there was seven feet deep, (it being only
about two feet deep at the Calhoun-street crossing,) and that
the bed of the river was composed of quicksand, protested
against the change, and declined to go on with the work
unless they would be paid for the extra or additional cost of
making the crossing at Clinton street, over the cost of making
it at Calhoun street; that the trustees requested such agents
not to make at that time any claim for extra work or extra
pay for crossing the river, and insisted that the work should
be proceeded with, promising that they would in future make
it all right about such extra work; that such agents gave to
the trustees notice in writing, that, by reason of such change,
the plaintiffs would demand extra pay for crossing at Clinton

street equal to the difference in cost over crossing at Calhoun street; that, under the direction of the trustees and the engineer, the plaintiffs laid the main pipe across the river, on the new line, at an additional cost, over the cost of crossing at Calhoun street, of $4575; and that, within two days after the completion of the work of crossing the river, such agents made their claim in writing to the trustees for the extra work, with an itemized account of its cost, the whole cost being $5075, from which $500 was to be deducted, as the cost of crossing at Calhoun street, the item being, "Extra expense on river crossing with 24 inch pipe, caused by change of original plan, $4575."

The complaint also contains, in its third paragraph, the common counts, claiming $12,000 for work and labor done, materials furnished, personal property sold and delivered, and money paid, laid out, and expended. A bill of particulars under this paragraph claims, in addition to the $4575, these items: "Extra expense caused by special castings not fitting, and delay in receiving same, in 20 inch line, $750; 149 wooden valve-boxes, difference between those furnished and those contracted for, at $3, $447."

The defendant demurred to the second paragraph of the complaint, but the demurrer was overruled. It then answered, by a general denial and a plea of payment in full. It also set up a claim of $3000 against the plaintiffs for work done by the defendant which the plaintiffs were bound by the contract to do, but neglected to do.

As to the second paragraph of the complaint, the answer avers, that, when the contract was executed, it was stated to the plaintiffs, and agreed, that no map or plan of distribution of pipes had been made, but that the defendant's engineer, Cook, would prepare such a map and plan and file it in the office of the trustees or in that of the city engineer; that such map and plan was to be the map and plan referred to in the contract, and was to designate the streets on which the pipes were to be laid, to all of which the plaintiffs then agreed; that Cook prepared a plan and map, and it was filed; that, when the plaintiffs commenced work, they inquired where the pipes

were to be laid, and the city. engineer pointed out to them where the work was to be done, and, at their request, prepared a map and plan showing the manner in which the pipe was to be laid under the river on the line of Clinton street, which the plaintiffs accepted, and which was in accordance with Cook's map and plan ; that the plaintiffs then commenced work on Clinton street, in excavating and laying pipes under the river, where it crossed Clinton street, and according to such working plan, without objecting ; that it was no more difficult or expensive to lay the pipe ˙under the river on Clinton street than it would have been to lay it under the river where. the river crosses Calhoun street ; and that any expenditure over $500, was the result of extravagance and unskilfulness.

As to the third paragraph of the complaint, the answer, in its sixth paragraph, avers that all the materials were furnished, and all the labor was performed, under the written contract, at prices specially set forth therein ; that the contract price has been fully paid; and that no written order was made by. the city engineer and the trustees, directing the plaintiffs to furnish any extra materials or do any extra work.

A motion by the plaintiffs to strike out the sixth paragraph of the answer was denied, and then the plaintiffs replied, denying generally the allegations of the answer.

The case was tried before a jury, who found a verdict for the plaintiffs, for $4100, being the amount agreed to be due to the plaintiffs, excluding the three above named items of $4575, $750, and $447, amounting to $5772 ; and a judgment for $4100, with interest and costs, was entered for the plaintiffs, to review which they have brought this writ of error.

The plaintiffs gave some evidence in support of the three items amounting to $5772, (the defendant introducing no evidence,) but the court declined· to allow.the plaintiffs to introduce ˙further testimony in support of those items, " on the ground,"˙ as the bill of exceptions states, " that, notwithstanding the location of the crossing of the St. Mary's at Calhoun street, the defendant had a right, under its contract with the ·plaintiffs, to change the place of crossing to Clinton street, as it did, said contract securing to the defendant that right, and

that the plaintiffs had no right, under the contract between the parties, to claim anything on account of either of the three items." The court also struck out all of the plaintiffs' evidence, except the contract, in support of the three items, and instructed the jury to return a verdict for the plaintiffs for $4100. To these rulings and instruction the plaintiffs excepted. This action of the Circuit Court is assigned for error.

We are of opinion that the court erred in its view of the rights of the plaintiffs under the contract. The clause providing that no claim for extra work shall be made or entertained, unless such extra work shall have been done in obedience to a written order of the engineer and trustees, is an independent clause from that which provides that the trustees shall have the right to make any alterations in the plan of the work, either before or after its commencement; and the extra work referred to in the former clause does not embrace work done in pursuance of an alteration made by the trustees in the plan. The latter work may be, in one sense, extra work, but if it results from an alteration of plan by the trustees, and there is, in consequence, an increase in the quantity of work, the actual increase is to be paid for, at the "contract rate for work of its class." The extra work referred to in the former clause required the authoritative written order of the engineer and trustees; but, as the trustees had the right to alter the plan, work done to carry out such alteration, when made by the trustees, was authorized by the trustees, in a manner equivalent to a written order by them and the engineer. The change of plan involved in crossing at Clinton street, was authority for the additional cost of crossing there, without a written order.

The contract states that the work is to be done "along the lines and in the streets, as indicated on the distribution map." The plaintiffs gave evidence tending to show that the map which the plaintiffs' agents examined before making the contract did not then show a crossing at Clinton street; that the plaintiffs consequently based their estimates and bid on a crossing at Calhoun street; that the change by the trustees to Clinton street was notified to the plaintiffs on the day on

which the work on the river was to begin; that the map was subsequently marked with a crossing at Clinton street; and that the increased cost caused by the change was $4575. The contract expressly provides that, if the alteration of the plan increases the quantity of work, the actual increase shall be paid for by the city. The only measure of payment provided for is the "contract rate for work of its class." The price fixed in the contract, of 60 cents per lineal foot for laying 24 inch pipe, such as that used in crossing the river, was based on the obstructions and difficulties to be expected in crossing at Calhoun street, in two-feet of water, the general price being based on the laying of the pipe on land, and the expense of crossing the river at Calhoun street being estimated at $500, in the price per lineal foot asked for laying 24 inch pipe. The increase of cost in crossing at Clinton street was $4575. The contract fixes no special rate for laying the pipe under the river, and it cannot fairly be said that there was any contract rate for work of the class of that done in crossing the river in the depth of water, and with the quicksand, found at Clinton street. On the view taken by the defendant, the trustees could have made an alteration of plan requiring that the pipes should traverse a great length of the river, in deep water and quicksand, in crossing it diagonally, and the city could have had all the work done at the general price per lineal foot for laying the pipe. The contract is not capable of such a construction. The actual increase of cost is to be paid for.

The provision that all loss or damage arising "from any unforeseen obstructions, or any difficulties that may be encountered in the prosecution of the" work, "shall be incurred by the contractor without extra charge" to the city, cannot fairly apply to the obstructions and difficulties at the changed place of crossing, resulting from the increased depth of water and the quicksand.

As to the claim for the $750, the "special castings" were to be supplied by the defendant from a manufacturer at Fort Wayne, and not by the plaintiffs. They were connections between larger and smaller pipes. The plaintiffs had the

trenches ready, but the castings, when furnished to them, were defective in size, and expense and delay ensued, in remedying the defects, causing a damage to the plaintiffs, as alleged, of $750. The defendant contends that the clause in the contract which provides that the plaintiffs "shall have no claim upon the city for any delay in the delivery of pipes or other materials from the manufacturers," throws the loss from these defects on the plaintiffs. But we do not so think. The defects were such as could not be detected till the castings were being put in place, and the claim is not for delay in their delivery, within the meaning of the clause referred to. Nor does any work done by the plaintiffs in altering the castings, come under the head of such extra work as required a written order.

The size of the valve-boxes is not mentioned in the contract, nor their cost. They were, therefore, to be of the usual size and cost. The trustees afterwards required the valve-boxes to be of a size which made them cost $3 more each than those of the usual size would have cost. This was a change of plan, and the increased work caused by it is agreed to be paid for, but there is no contract rate for work of the class. The item of $447 seems to be recoverable.

The judgment of the Circuit Court is reversed, and the case is remanded to that court, with a direction to award a new trial.

*Judgment reversed.*