# JOHN W. CARSON and Another v. CITY OF DAWSON.[1]

May 28, 1915.

Nos. 19,391—(253).

**Modification of contract — question for jury.**

　　1. The parties to a written contract for the construction of a dam discovered that the dam contracted for would not span the river, being 20 feet too short. As the result of a meeting of plaintiffs and defendant's city council, the dam was constructed so as to span the river. The issue as to whether the contract was changed and modified or abrogated was properly submitted to the jury.

**Same — construction of municipal charter.**

　　2. Defendant's home rule charter providing that "whenever it is proposed or determined by the city council to contract for the purchase of any commodities or any services to be performed, the estimated cost of which shall

1 Reported in 152 N. W. 842.

exceed the sum of three hundred dollars, the council shall advertise for proposals or bids to furnish such commodities or perform such services" *held* not to forbid the making of changes or alterations in the plans of a valid written contract for the construction of a public work, when the right to make such changes or alterations is reserved in the contract itself.

**Same.**

3. Where a valid written contract provided that no claim for extra labor or material should be allowed unless ordered in writing by the city, and also provided that the city should have the right to make alterations in extent, dimensions, form of plans or location of the work, these provisions are independent, so that where changes or alterations are made, necessitating an increase in expense, the contractors are entitled to recover the value of the necessary labor and material, even though no written order therefor has been given.

**Harmless error.**

4. Certain assignments of error relating to the admission of testimony and the charge of the court examined and *held* that, if any error was committed, defendant was not prejudiced thereby.

**Verdict sustained by evidence.**

5. Record examined and the evidence *held* sufficient to sustain the verdict.

Action in the district court for Lac qui Parle county to recover a balance of $4,029.25. The case was tried before Qvale, J., who when plaintiff rested denied defendant's motion to dismiss the action, and a jury which returned a verdict for $3,984.56. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*H. O. Halvorson* and *Fosnes & Fosnes,* for appellant.

*A. W. Ewing* and *T. J. McElligott,* for respondents.

SCHALLER, J.

Action to recover a balance claimed to be due from defendant for the construction of a dam across the Lac qui Parle river. The case was tried to a jury which returned a verdict for plaintiffs for $3,-984.56. Defendant moved for judgment notwithstanding the verdict or for a new trial and appeals from the order denying the motion.

On March 29, 1913, the defendant city entered into a contract

with the plaintiffs for the construction of a dam across the Lac qui Parle river in said city.

The contract was in writing duly executed by the parties and provided that the plaintiffs, in consideration of the sum of $4,800, should build and construct the said dam, furnishing the labor and material therefor, according to the plans and specifications referred to and made a part thereof.

Plaintiffs had purchased all the material, a large part of which was on the ground ready to begin the work, when it was discovered that, by mistake of the engineer employed by the defendant, the dam contracted for was too short by 20 feet and would not span the river.

This discovery was made by the plaintiffs, who called the attention of the defendant thereto. After an informal talk, the plaintiffs and certain members of the defendant's city council went to Granite Falls in this state to inspect the dam across the Lac qui Parle river at that place.

Thereafter, and on the eighteenth day of June, 1913, the city council met with the plaintiffs at the city clerk's office. As a result of that meeting the dam was built.

Plaintiffs claim that, at the meeting of June 18, the defendant's city council determined to alter the plans and specifications by increasing the length of the dam a distance of 20 feet; that it should be modeled according to the Granite Falls dam, and that the height of the abutments should be greater than in the specifications, so as to correspond with the Granite Falls dam. The defendant claims that a new contract was entered into and that it was agreed that the cost of the extension of the 20 feet under the new contract should not exceed $1,000.

The dam built by plaintiffs is conceded to be well built, of first class material and satisfactory in every respect. All the parties to the transaction appear to have acted honestly and with absolute good faith.

On the trial, defendant practically conceded that the plaintiffs were entitled to a verdict for at least $1,730.96, and the court so

charged the jury. The court also charged the jury that the greatest amount that the plaintiffs could recover was the sum of $3,815.85, with interest.

1. The first question which presents itself is whether or not the contract of March 29 was in any way changed or abrogated by the action of the city council at its meeting of June 18. It appears certain that an attempt was made at that meeting to change some of the provisions of the contract. This was necessary if the dam was to be built at all, because the one contracted for was too short. It is evident that both parties have treated the meeting of June 18 as a lawful, valid meeting of the defendant's city council, plaintiffs because they say that the parties modified and changed the contract at that meeting, and defendant because it claims that at that meeting the contract was abrogated entirely. It is not claimed that any action of any kind was had at any other meeting of the city council, and, unless abrogated or changed at that meeting, the contract was in full force and effect as entered into.

There was a conflict of evidence as to what actually took place at this meeting of June 18. The result, however, was the building and construction of the dam in question, its acceptance by the defendant, the payment of $4,800, the price contracted for, and the allowance, by the defendant's city council, of an additional sum of $2,029, which was declined by the plaintiffs.

The issue as to whether or not the contract was changed and modified or abrogated at the meeting of June 18 was submitted to the jury under proper instructions, and the jury, by its verdict for plaintiffs, must have found adversely to the contention of the defendant. No record was made of the proceedings of the council at the meeting of June 18, and it nowhere appears that plaintiffs ever consented to a cancellation of the contract.

We must, therefore, hold that the contract was not abrogated but changed and modified.

2. Were these changes and modifications within the power of the defendant to make, in view of one of the provisions of its home rule charter, to-wit:

"Whenever it is proposed or determined by the city council to contract for the purchase of any commodities or any services to be performed, the estimated cost of which shall exceed the sum of three hundred dollars, the council shall advertise for proposals or bids to furnish such commodities or perform such services, provided, however, that this provision shall not in any manner apply to purchase of fuel or supplies for the light plant or services required in connection therewith."

It is conceded that the contract of March 29 was properly entered into, and was valid and binding on both parties. It was let to the lowest bidder, who bid with reference to the plans, specifications and estimates, prepared by and under the authority of the defendant. The specifications upon which the bids were made and which became part of the contract, provided, among other things that "bids must be made out on blank forms furnished by the city." * * * "Itemized unit prices as asked for on bidding blanks must be made by contractors, and such prices, either by way of increase or decrease in the work called for and contemplated, shall hold good until the date set for completion of the work in these specifications."

The specifications further provided that "the city shall have the right to make alterations in extent, dimensions, form of plans or location of the work at any time previous to the completion of the same," provision being made for credit to the city if any reduction was ordered and for payment in case of an increase, the engineers to be the final arbitrators if an agreement on the price could not be arrived at.

The provisions in the plans and specifications on which the bids were tendered providing for changes and alterations, increases or decreases, were evidently inserted for the protection of the parties, and the bids were made with reference thereto, as well as with reference to all the other provisions in the plans and specifications. These provisions were subsequently embodied in the written contract by the adoption of the plans and specifications. We cannot hold that the above provision of the home rule charter of the defendant forbids the making of a contract of this kind. Such a construction

would render impracticable any attempt by the city to enter upon important public improvements, the cost of which exceeded $300.

If this is true, it must be held that the defendant, under the provisions of the contract itself, had power to make the changes and alterations which it is asserted by the plaintiffs it did make at its meeting held June 18, and that the defendant was bound by such changes and alterations if any were made.

The defendant takes the position that, even though it was authorized to make such changes and alterations, the building of the dam in accordance with the changes and alterations made at the meeting of June 18 was extra work, and that under the provisions of the contract, extra work and material must be ordered by the city in writing and a written agreement must be entered into, fixing the price of such work or material. On failure to comply with this provision, no allowance or payment can be made for such extra work or material.

The jury must have found that the defendant changed the contract by increasing the length of the dam, extending the wings, etc., thus increasing the expense. The provision of the contract reserving the right to make changes and alterations, and the provision that no claims for extra work shall be allowed unless ordered in writing, must be held to be independent. So that where the changes made necessitate an increase in the expense, the contractors are entitled to recover the value of necessary extra labor and material, even though no written order therefor has been given and no written contract fixing the price thereof has been made. Wood v. City of Fort Wayne, 119 U. S. 312, 7 Sup. Ct. 219, 30 L. ed. 416. It also follows that it was not necessary to advertise. for bids before making the changes in the contract at the meeting of June 18.

4. During the progress of the trial, defendant conceded that plaintiffs should recover for certain items, including the cost of a fishway, the cost of guard rails and certain other items, all of which were included in a statement furnished by defendant to the jury; so that practically the only issue on this branch of the case was, the amount

of concrete necessary to build the dam as the same was finally constructed, and its value.

Plaintiffs claim that this concrete was to be paid for at the unit price specified in the written contract, to-wit, 40 cents per cubic foot in place, and also testified that that price was again agreed on at the meeting of June 18. This latter claim was controverted by the defendant and its witnesses. It was assumed by the court in its charge that the price for the concrete in place, was 40 cents per cubic foot. The question of the amount due the plaintiffs for concrete in place, was without objection submitted to the jury on that basis. The questions submitted to the jury on this branch of the case were: What number of extra cubic feet of concrete was it necessary to put in the dam, and what was the value thereof at 40 cents per cubic foot? Every other disputed item was either agreed to or submitted without objection.

5. The jury was instructed that: "There is no question but what the defendant left the building of the dam to the judgment of the plaintiffs in this case, to build it according to their best judgment. The defendant is not here complaining that it has not got what it expected. The city isn't here complaining but what they got a good piece of work."

No exception was taken to this instruction, nor is it challenged as error. In view of this instruction and the concessions and admissions made on the trial, it cannot be held that the errors assigned relating to the admission of testimony, if any were committed, were prejudicial to the defendant.

6. The other assignments of error go to the denial of defendant's requested instructions and to the charge of the court in setting forth the testimony of some of the witnesses. The court properly denied the requests. The charge was fair and impartial, and we cannot say that any comment or explanation made by the court was injurious to the defendant.

The assignment directed to the refusal of the court to grant defendant's motion to dismiss is disposed of in the case of Busack v. Johnson, supra, page 364, 152 N. W. 757.

An examination of the record convinces us that there was evidence sufficient to sustain the verdict.

Order affirmed.