Wessel *v.* Montgomery, Scott & Co., Appellants.

342

Argued October 4, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Charles A. Wolfe,* and with him *Mercer B. Tate, Jr.,* of *Montgomery & McCracken,* for appellant.

*Alexander Conn,* for appellee.

OPINION BY GAWTHROP, J., December 16, 1932:

This is an action in assumpsit by a customer against a brokerage firm to recover the market value of certain Liberty Bonds which, according to plaintiff's allegations, defendants failed and refused to deliver to plaintiff after he had purchased and paid for them. The total amount claimed was $1,572.76, with interest from October 6, 1931. Defendants filed a counter-claim for the purchase price of the bonds. The trial resulted in a verdict for plaintiff, and from the judgment entered thereon comes this appeal.

On October 3, 1931, defendants purchased for the account and risk of Jerome Bennett, a member of the Philadelphia Bar, $1,500 United States Liberty Bonds at an aggregate cost to Bennett of $1,574.64. Defendants confirmed the sale by their purchase order sent to and received by Bennett in the morning mail on Monday, October 5, 1931. After receiving the confirmation Bennett asked plaintiff, one of his law partners, to go to defendants' office for the purpose of paying for and taking up the bonds. Plaintiff called at defendants' office at about 10 A. M., having in his pos-

session two checks, one of which was in the amount of $1,500, dated October 2, 1931, drawn by Progressive Building Association on the Franklin Trust Company, payable to the order of Charles J. Weiss, and endorsed by Weiss. The other check was in the amount of $74.64, was dated October 5, 1931, was drawn by Charles J. Weiss on the Franklin Trust Company, and was payable to the order of defendants. Plaintiff tendered to Walter F. Lyons, defendants' authorized agent, and known as a customer's man, the two checks in payment of Bennett's bill. Plaintiff's testimony as to what followed was this: Lyons told plaintiff that the rules of the defendant firm would not permit him to accept the checks in payment of Bennett's bill, because they were not Bennett's checks, but that if the account were transferred to plaintiff's name, with Bennett's permission, the checks could be used in payment of the account. Lyons called Bennett on the telephone and obtained his consent to the transfer of the account to plaintiff and the transfer was made. We quote from plaintiff's testimony: "Q. When he (Lyons) got through talking to Mr. Bennett, what did Mr. Lyons say? A. He said, 'Come along with me to the cashier's window, and we will see what we can do about taking up the bonds.' Q. After that what did you say to Mr. Lyons? A. I said to Mr. Lyons that these checks will have to be sent over to the Franklin Trust Company and collected, cash be gotten for them, and Mr. Fawley, and there was another gentleman whose name I don't know who was in the office at the time, raised some question about doing it. So I said to Mr. Lyons, 'Walter you know me, and you know Jerome. You put the checks in your own account and send them over and get cash for them in your account and pay for the bonds, if your house does not want to do it.' By the court: Q. You mean in his individual account? A. Yes. So Mr. Lyons said, 'We will see what we

can do about the house sending them over.' Just at the time there was a telephone call and Mr. Lyons said, 'Mr. Bennett wants you on the 'phone.' He said: 'You can take it back there in the cage.' ...... I talked to Mr. Bennett. When I got through Mr. Lyons said, 'What did he say?' I said, 'Walter, Jerome says we should get the money on those checks right away.' So the check having been drawn by Mr. Weiss, having been endorsed by Mr. Weiss, they asked me to endorse the checks, so I endorsed not only the check of the building association, which was to his order, but also endorsed the individual check of Mr. Weiss, which was to the order of Montgomery, Scott & Company, and I at the time, after speaking to Mr. Bennett, I at that time again emphasized to Mr. Lyons the necessity of sending the check over to the Trust Company and getting cash on it right away. Q. What did Mr. Lyons say? A. Just at that time I recall particularly saying to Mr. Lyons, 'Walter I want you to get those bonds as soon as you get the cash from the bank, and put them in your desk and lock them up, and I will get them from you either later this afternoon or the first thing in the morning,' and he said, 'All right, I will do that,' and I handed him the check, and I think I walked in the Board Room after a few minutes, and a short time afterwards left and returned to the office. Q. What did Mr. Lyons say to you as you handed the checks to him as you testified a while ago? A. He said, 'All right, I will accept the checks,' as an answer to my request to him—I said to Mr. Lyons, 'Will you send the checks over to the Franklin Trust Company and get the cash?' He accepted the checks and said, 'All right I will do it.' '' Plaintiff was counsel for the Franklin Trust Company and a depositor therein. He admitted that he knew that the Trust Company was in a precarious condition when he handed the checks to Lyons. Bennett testified that when Lyons asked

him over the telephone whether it would be satisfactory to have the account transferred to plaintiff, he told Lyons that it was satisfactory to him and that "all I am interested in right now is to see we get the bonds and get the checks paid," and that Lyons said, "We will transfer it to Henry (plaintiff), and the thing will be put through today."

Three witnesses for defendants, their cashier, assistant cashier, and Lyons, testified that when plaintiff came to their office on Monday, October 5th, his first request was that the two checks be cashed for him and when this was refused plaintiff requested that the checks be sent to the drawee bank for collection by a "runner;" that this request was refused and that the agreement was that the checks should be deposited and collected in the ordinary way. They denied that they, or any of them, agreed to take or send the checks to the drawee bank and have them cashed so that the money could be applied to payment for the bonds. It is admitted that defendants did not send the checks to the drawee bank by a special runner or have them collected on October 5th, and that the drawee bank was open and paid all checks presented to it for payment up to midnight October 5th. It appears that the checks were deposited by defendants in the regular course of business on that day in the Fidelity-Philadelphia Trust Company and were presented to the Franklin Trust Company on the morning of October 6th. The Franklin Trust Company closed its doors at midnight on October 5, 1931, and did not reopen on October 6th, due to the fact that it was taken over by the Secretary of Banking of the Commonwealth. Accordingly, the two checks were returned to defendants on October 6th by the Fidelity-Philadelphia Trust Company with the notation that the drawee bank had been closed and that the checks had not been collected. The checks were duly pro-

tested and are now in defendants' possession. Plaintiff thereafter demanded delivery of the bonds, to which defendants refused to accede and this suit followed.

The trial judge submitted to the jury the single question of fact, whether the agreement made between plaintiff and defendants' authorized agents on October 5th was that the checks should be presented for payment at the drawee bank by a runner at once and the proceeds applied to payment for the bonds, or the bonds. The verdict establishes that the arrangement was the former.

Defendant urges upon us that the evidence is insufficient to warrant a finding that defendants agreed with plaintiff that the checks should be collected by a "runner" on October 5th. We are unable to come to that conclusion, because a careful study of the testimony has convinced us that the question, whether such an agreement was made, was for the jury.

Another contention made in behalf of defendants is that plaintiff failed to prove the authority of the representatives of defendants, with whom he dealt, to bind defendants by the agreement which he alleged and undertook to prove. The contention is made that the agreement sought to be established was unusual and extraordinary; that, as plaintiff seeks to hold defendants on a contract made by their agents, the authority of the agents to make the contract must be proved; and that this was not done. The answer to this contention is that plaintiff averred in the third paragraph of his statement of claim that "the defendants were represented in the transaction here involved by Walter Lyons and Clinton Fawley, the then duly authorized servants, agents and employees of the defendants," and this averment was admitted in the affidavit of defense. Nowhere in the affidavit of defense do defendants deny the authority of these agents to

accept the checks and collect them immediately by "runner" or some other special collector. Their agency and authority are admitted without qualification. Defendants averred, and relied at the trial upon, the defense that these agents never made the agreement which plaintiff averred and undertook to establish. But, despite this fact plaintiff had the burden of proving his case. It was necessary for him to establish the fact that Lyons, the agent of defendants who, he says, promised "to send the checks over to the Franklin Trust Company and get the cash," made that promise in behalf of his principals, in his capacity as their agent and not in his individual capacity. If Lyons did make the promise to get the cash on the afternoon of October 5th, did he make it in his capacity as agent of defendants or in a purely personal capacity? We cannot escape the conclusion that plaintiff's own testimony clearly raised this question and left it wide open for determination by the jury. For, he testified that after some question was raised about sending the checks to the bank and getting the cash, he requested Lyons to put the checks in his individual account, to "send them over and get the cash for them in your account and pay for the bonds, if your house does not want to do it." In our opinion this question should have been submitted to the jury and they should have been instructed that if the promise attributed to Lyons was made in behalf of his principals the latter would be bound by it, but that if he was merely promising to carry out the suggestion of plaintiff that he get the cash and put it in his individual account in order to pay for the bonds and was acting in a personal capacity, defendants would not be bound by his promise. Although the failure of the trial judge to submit this question is not specifically raised by any assignment of error and counsel for defendants did not request the court to submit the question, we are

of opinion that the question was so clearly raised by plaintiff's own testimony and was of such vital importance in the determination of the rights and liabilities of the parties, that the failure of the court to submit it to the jury was an error so basic and fundamental as to require a new trial.

Another contention of appellants is that the alleged agreement to make a special collection of the checks is of no effect, because plaintiff gave no consideration for it. We see no merit in this point. The promise to collect the checks specially was but part of the entire transaction which involved the purchase and sale of, and the payment for, the bonds. It required no independent consideration to support it. It merely concerned the method of paying for the bonds. Defendants could have agreed to accept a check or a note or any other form of obligation as absolute payment if they desired and would be bound by their agreement. The only question here is whether defendants agreed to present the checks for payment according to plaintiff's contention. We think that the able counsel for appellee is on sound ground when he states that a creditor cannot accept a check from his debtor under a promise to present the check for payment at once, and then, presentment being delayed and payment of the check not made because the bank has failed in the interval, demand that the debtor pay again. It is conceded that if the checks had been presented on the afternoon of October 5th they would have been paid. It is well settled that, in the absence of an agreement to the contrary, a check or promissory note, of either the debtor or a third person, received for a debt, is merely conditional payment, that is, satisfaction of the debt, if and when paid; but the acceptance of such check or note implies an undertaking of due diligence in presenting it for payment, and if the party from whom it is received sustains loss by want of such dili-

gence, it will be held to operate as actual payment: Kilpatrick v. Home B. & L. Assn., 119 Pa. 30. On that principle, if the checks delivered to Lyons were delivered to him as the authorized agent of defendants for immediate presentation to the drawee bank, and not in his individual and personal capacity, and he failed so to present them, and plaintiff sustained loss as a result of such failure of presentation, the acceptance of the checks operated as actual payment for the bonds.

The only remaining contentions of appellants which require consideration are that plaintiff is not entitled to recover in this action because he has sued in assumpsit, when he should have sued in trespass, and that he has failed to prove that he has suffered any damages. It is urged that the refusal of defendants to deliver the bonds for which plaintiff had paid was a conversion and a tort for which the remedy was an action in trespass. If plaintiff had actually paid for the bonds and defendants failed and refused to deliver them, there was a breach of contract and plaintiff could sue in assumpsit. It is elementary law that where the same act or transaction is both a breach of contract and a tort the plaintiff may waive the tort and sue in assumpsit. The suit was on the contract and in affirmance of it. "When suit is brought on a contract and in affirmance of it, the verdict should make the plaintiff whole, that is, put him in as good a condition as if the contract had been performed": Wilkinson v. Ferree, 24 Pa. 190. Plaintiff claimed as damages the fair market value of the bonds, which he had paid for, at the time of the refusal of defendants to deliver them to him. This was the same amount as the price at which the bonds were bought by plaintiff for him. The contract contemplated immediate delivery of the bonds and no question as to the effect of the rise or fall of the market upon the measure of

damages is involved. In the circumstances this was the proper measure of damages. See Wilkinson v. Ferree, supra. The suggestion of counsel for appellants that plaintiff still has his remedy against the drawee of the two checks and against the makers and endorsers thereof requires no discussion. The fact that plaintiff may have had a cause of action against these parties to the checks does not deprive him of his right to enforce his remedy against defendants under the contract upon which he sued.

The judgment is reversed and a venire facias de novo is awarded.