## THORNTON BROS. COMPANY v. MEMORIAL PARK ASSOCIATION, INC.[1]

July 6, 1934.

No. 29,900.

[1]Reported in 256 N. W. 53.

*William M. Nash* and *Chester L. Nichols,* for appellant.

*John C. DeCourcy* and *Harry Weiss,* for respondent.

*HOLT, Justice.*

Defendant appeals from the order denying its motion for a new trial.

Plaintiff is a corporation and contracted with defendant, a corporation, to do grading in its cemetery. The work was actually done by a subcontractor, Martin Wunderlich. The action is to recover for a balance due. The answer alleged payment and counterclaimed on the ground that at stated places more earth was removed than called for by the contract, necessitating the lowering, at an expense, of the watermains installed. It was stipulated that if the plaintiff be denied recovery then defendant may be given a judgment for $400 on its counterclaim. The trial was to the court. It found that on April 25, 1929, a written contract was entered into by the parties for the work; that between that date and November 1, 1929, plaintiff, under the contract and in accordance therewith, excavated and removed 77,907 cubic yards of earth; that defendant paid for only 73,950 cubic yards thereof and failed and neglected to pay for 3,957 cubic yards, and gave judgment for $1,602.58 with interest. The price for the excavating and removal of the earth specified in the contract was 40½ cents a cubic yard. The court, having found that the work was done in accordance with the contract, ordered that defendant take nothing by its counterclaim.

No assignment of error directly challenges any ruling on the admission or exclusion of evidence. The main attack is on the finding that the 77,907 cubic yards excavated and removed were so excavated and removed in accordance with the contract. Defendant claims that more than 3,957 cubic yards thereof were removed wrongfully and without authority from defendant. The disputed yardage came principally from block 15. The earth excavated in grading down hillocks was placed on the low places in the cemetery. The plans for the grading and improvement were made by Morell

& Nichols, Inc., and that firm or corporation of landscape engineers was by the contract in charge of the work for defendant. We quote from the specifications attached to the contract:

"The term 'engineer' or 'engineers' as hereinafter or heretofore used, is understood to mean the firm of Morell & Nichols, Inc. or their authorized representatives. * * * The engineer in charge of the work shall be the sole judge and arbitrator as to the quantity and quality of all materials and workmanship used or required under this contract. * * * The subcontractor and his agents and workmen must conform to the engineer's requirements in all matters pertaining to the works, and shall obey all reasonable orders, demands or requests of the said engineer as speedily as possible. * * * The engineers will give stakes for grading and line. * * * Upon the satisfactory completion of all the contract, the whole work will be carefully measured as speedily as practicable and a complete and final estimate will be made thereon by the engineer, showing the total balance due the subcontractor, after making all legal and specified forfeitures and deductions. * * * All work shall be under the direction and supervision of the engineers and shall be constructed in the order as hereafter directed by them."

The evidence shows that Morell & Nichols, Inc. employed a surveyor named Carlson, who had had several years' experience as a transit man on highway and railroad construction work, to represent the firm on the job and calculate the earth moved each day. Carlson laid out the work on the ground, set the stakes, and directed where the excavation was to be made and where the excavated material was to be placed as a fill. He calculated and daily reported the yardage excavated and moved. Nichols and Nason, the landscape engineers of the firm of Morell & Nichols, Inc., visited the cemetery almost daily. Wunderlich, the subcontractor who performed plaintiff's contract, testified that both Nichols and Nason told him before the work began that Carlson would be in charge thereof. The record Carlson kept of the earth moved is not disputed. The work as done was accepted, although Nason testified it was accepted under protest. Under the above quoted terms of

the contract (the exhibit quoted from is the contract between plaintiff and its subcontractor, but, as we understand, it was in the same terms except as to price as that between plaintiff and defendant) and the testimony and facts as above outlined, it seems clear that the trial court had substantial basis for the finding that plaintiff "under the contract and in accordance therewith excavated and removed" 3,957 cubic yards of earth that has not been paid for. It is true that Carlson directed the removal of more earth from block 15 than the plans indicated. He gave as reason for so doing that a low place near by had to be filled. Carlson, being the representative of Morell & Nichols, Inc. in charge of the work, and the one doing the same being so informed, he, Wunderlich, had to comply with Carlson's directions or demands under the terms of the contract.

Defendant takes the position that the 3,957 cubic yards not paid for (in fact 9,000 cubic yards) was extra and additional work, and that in order to receive payment therefor there had to be a compliance with this provision of the contract:

"No allowance will be made for any extra work or material claimed to have been performed or furnished unless provided for beforehand by written order to that effect signed by the engineer."

There was no written order. By another provision defendant was given the right to increase or decrease the amount of work, and any changes which would increase the cost of the improvement would be considered "extra work governed by the provisions as to written order and payment pursuant thereto." One section provides:

"No excavations, filling or other material will be measured or paid for beyond the limits defined by the stakes, the drawings or the engineer's directions. In cases where no limits have been previously so defined, only such material will be measured as is actually necessary in the engineer's opinion to be removed or supplied, as the case may be."

Carlson required the removal of all of the 77,907 cubic yards that were removed. He was, or properly could be found to be, the

engineer or the authorized representative of the engineer. Under the last above quoted provision, it would seem right and reasonable to conclude that, where the one placed in charge of the work as engineer or the engineer's representative actually orders the excavation and fill to be made and measures the same as work done and in accordance with the contract, it is not extra work although the final yardage moved exceed the estimated amount by more than the usual per cent. One of defendant's witnesses testified that it was usual that the final estimate after the work is done exceed the estimate on the plans by from five to ten per cent. Here the preliminary estimate based on the plan was 64,000 cubic yards. Some consideration may also be given to the nature of the work to be done under the contract and the form of the contract. It was grading a cemetery and a mall or roadway therein at a fixed price for each cubic yard of earth moved. It covered a large area, and before the work was actually done the number of yards that would have to be moved could be but a rough estimate. It is different from that of constructing a building of specified materials according to minutely detailed drawings where inches or even fractions of inches may be of the greatest importance. Then again, the provisions quoted from or above mentioned are not in the contract itself but in 17 typewritten pages labeled "Specifications—General Clauses and Conditions," and containing 30 sections. It is evident that this is a general form to cover all kinds of excavations and that many provisions thereof are not applicable to all the work to be done under this contract. Shaw v. First Baptist Church, 44 Minn. 22, 46 N. W. 146, greatly relied on by defendant, involved a church building. The case at bar has features that bring it more within the law applied in Walberg v. Jacobson, 143 Minn. 210, 173 N. W. 409, than that of the Shaw case. Of some bearing is Carson v. City of Dawson, 129 Minn. 453, 152 N. W. 842. Furthermore, the contract itself contains this specification as to the work to be performed thereunder, viz.:

"Consisting of the grading of certain roads and land, together with all other works connected therewith or necessary thereto, in accordance with the specifications herein contained, and in accord-

ance with the plans and directions made and to be made from time to time as the work progresses, and as in said specifications provided, said plans and directions to form a part of this contract."

The directions here spoken of must refer to those given by Morell & Nichols, Inc. or their authorized representative. And, as above stated, the court could well conclude that Carlson was such representative placed in charge of the work and seeing to its execution in accordance with the contract. We apprehend that the trial court did not find it necessary to consider whether there was 'a waiver of written orders for extra work or ratification.

The order is affirmed.

