## CITY OF WHEELING v. JOHN F. CASEY CO.

### No. 3695.

Circuit Court of Appeals, Fourth Circuit.
Jan. 8, 1935.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

Carl O. Schmidt and Howard D. Matthews, both of Wheeling, W. Va. (P. J.

McGinley, Wright Hugus, G. Alan Garden, and Lester C. Hess, all of Wheeling, W. Va., on the brief), for appellant.

James B. Riley and Robert J. Riley, both of Wheeling, W. Va. (T. S. Riley, of Wheeling, W. Va., on the brief), for appellee.

NORTHCOTT, Circuit Judge.

An action of trespass on the case in assumpsit, for damages in the sum of $160,000, was instituted in the District Court of the United States for the Northern District of West Virginia by John F. Casey Company, a Pennsylvania corporation, appellee herein, and hereinafter referred to as Casey Company, against the city of Wheeling, a municipal corporation of West Virginia, appellant herein, and hereinafter referred to as the city.

The action was based on a contract entered into between Casey Company and the city on April 16, 1923, for the construction of a purification and filtration plant in the city of Wheeling. Prior to the execution of the contract, which is the subject of this action, the said city had entered into a contract with the J. N. Chester Engineers, hereinafter referred to as engineers, a copartnership, an engineering firm of Pittsburgh, Pa., for the designing of the work, for the production of plans and specifications for the same, and for the complete engineering work thereon, including the location of the plant and the supervision of the construction of said project; said engineers to have entire charge of it.

One Stow, an employee, agent, and the designated resident engineer of the engineers, in laying out the base of the main line of the whole project, mistakenly located said line 21.9 feet to the west of where the same should have been located if laid out in exact accordance with the plans and specifications; the result of this mistake was to shift the entire project as a unit 21.9 feet to the west, every item or unit of said project, however, running in the same relative position to each other unit or item of said project as though constructed exactly on the location called for by said plans and specifications. The mistake of Stow was not discovered by him until some two months after it had been made, at which time the work had been started. The Casey Company did not discover the mistake until some thirteen months afterwards, when the work of the entire project was 98 per cent. completed. The engineers never advised the Casey Company that the mistake had been made, though there was evidence to the effect that it was highly probable that the city manager of the city was notified of the mistake by one of the partners of the engineers in the latter part of the year 1923 or the first part of 1924. The city did not notify the Casey Company of the mistake.

After the intake line, which is a pipe laid along the bed of the river, had been laid, the engineers directed that it be subjected to a certain test called the suction or emptying test. The Casey Company protested against employing such a test, but, upon demand of the engineers, made it and, as a result, the pipe line floated and came to the surface. For the cost of repairing this intake line and for the additional cost incurred by Casey Company in constructing the project on the mistaken location instead of on the location as shown on the original plans and specifications, the Casey Company claimed damages in the amount of $160,000, and on April 3, 1929, filed, in this action, its declaration, containing three counts.

The city demurred to the declaration, which demurrer was overruled. The city also objected to the sufficiency of the bill of particulars filed with the declaration, which objection was sustained. An amended bill of particulars was filed, the sufficiency of which was again objected to by the city, and which objection the court overruled. Two special pleas were also filed by the city, which were objected to by Casey Company, and the objections were sustained.

After a long trial the jury returned a verdict in favor of the plaintiff in the sum of $75,000, upon which verdict judgment was entered. From this action of the court below this appeal was brought.

■ The first question to be considered is whether the relationship between the engineers and the city was that of employer and employee, or whether the engineers were independent contractors for whose mistake or wrong the city had no responsibility. A study of the contracts between the engineers and the city and the Casey Company and the city and the surrounding circumstances established by the evidence leads us to the conclusion that the relationship of the engineers was not that of an independent contractor, but that the engineers

were the agents of the city, placed by the action of the city in a position of authority over the entire project and all of the details connected with its construction, including location, with the option on the part of the engineers to make any changes they might think necessary. This being true, it follows that the city is primarily liable for the acts of its agents, the engineers.

The contract between the engineers and the city supports the idea of agency rather than that of independent contracting. Under this contract the preliminary work done by the engineers was subject to approval by the city. Paragraph 10 of the specifications made a part of the contract between the plaintiff and the city is as follows:

"Definition of Engineer.

"(10) Where the word 'Engineer' occurs in these specifications or contract, it shall be understood to indicate the Engineers of the City of Wheeling, W. Va., or to said Engineers' duly appointed assistants, and all explanations or directions necessary for the proper execution and construction of the work shall be given by the Engineers, who shall have final decision on all matters of dispute involving the character or amount of work, and the compensation to be made therefor, or any question arising under these specifications. They shall have the option of making changes in location, grades, alignment, forms, plans, position, dimensions or materials of the work contemplated to be done under these specifications either before or after construction is begun. Such changes will be adjusted on a basis of the additional or decreased cost of the work affected."

█ Granting that the city was not at fault either as to the mistake or its concealment after the mistake was discovered, it is a well-recognized principle that where one of two innocent persons must suffer from the conduct of a third the loss must fall upon the one who has enabled such third person to occasion it. Atlantic Life Insurance Co. v. Rowland (C. C. A.) 22 F.(2d) 126, and cases there cited.

Here the city selected and placed in charge of the project the engineers who made the mistake and afterwards concealed it and made it possible for the loss to occur.

█ The engineers, after the approval of the plans and specifications drawn by them, directed the setting of the stakes, and it was then that the mistake that gave rise to this litigation occurred. That the mistake was not intentional seems clear, and it is contended on behalf of the city that the plaintiff, having contracted to construct the project according to the plans and specifications, should have discovered the mistake before beginning the work. On this point we agree with the judge below that the question as to whether the plaintiff in the exercise of reasonable care should have known of the mistake was one for the jury, which question the jury resolved in favor of the plaintiff. We think the jury reached the correct solution. The engineers had drawn the plans, the contracts gave them the right to locate the plant, and the work of location was primarily the duty of an engineer placed in complete authority over the entire project and over the contractor rather than the duty of the contractor. It seems to us reasonable that the contractor should rely implicitly upon the direction of the engineer with regard to a question that was solely one of engineering. In the case of Berry v. Huntington Masonic Temple Association, 80 W. Va. 342, 93 S. E. 355, will be found a discussion of the relationship between one placed in sole charge of a project and the contractor. In that case the erection of a building was involved and it was the architect who had sole direction of the work done under the contract. The court held that the architect was the agent of the owner as well as the arbiter or umpire as to certain differences that might arise. There the owner designated the architect to act for him, as here the city designated the engineers to act for it, and the court held the principal liable for the acts of the agent.

See, also, Maney v. Oklahoma City, 150 Okl. 77, 300 P. 642, 76 A. L. R. 258; Wyandotte & D. R. Ry. v. King Bridge Co. (C. C. A.) 100 F. 197; City of Chicago v. Duffy, 218 Ill. 242, 75 N. E. 912; Henderson Bridge Co. v. McGrath, 134 U. S. 260, 10 S. Ct. 730, 33 L. Ed. 934.

█ Having reached the conclusion that the engineers were the agents of the city and not independent contractors, it follows that the action in assumpsit was a proper one. The action was not primarily based upon a tort, as the original mistake of the engineer as to the location was not intentional, and the right of the Casey Company to recover arose from the contract. City of Chicago v. Duffy, supra; Wyandotte &

D. R. Ry. v. King Bridge Co., supra; Guerini Stone Co. v. P. J. Carlin Const. Co., 248 U. S. 334, 39 S. Ct. 102, 63 L. Ed. 275; Wessell v. Montgomery, 106 Pa. Super. 341, 163 A. 347; Ryan v. City of New York, 159 App. Div. 105, 143 N. Y. S. 974.

The case of Parkersburg & Marietta Sand Co. v. Smith, 76 W. Va. 246, 85 S. E. 516, Ann. Cas. 1918E, 449, relied upon on behalf of appellant to sustain the point that the tort could not be waived and assumpsit brought, is not in point. In that case there was no contractual relationship, with regard to the property injured, between the plaintiff and the defendant, and the defendant was under no duty to care for the property; here there was a contractual relationship with regard to the subject-matter of the controversy between the plaintiff and the defendant, and there was a promise to pay for damages shown.

The action being properly brought in assumpsit, the declaration was sufficient, and the demurrer was properly overruled. The amended bill of particulars filed was sufficient, and objections to it were properly overruled by the trial judge. It was as full and detailed as could be expected in view of the failure of the engineers, the agents of the city, to notify the Casey Company of the mistake when it was discovered in June, 1923, before the work had progressed to any great extent. Plaintiff was allowed to proceed with the work without notice of the mistake for a year, and until the work was 98 or 99 per cent. completed. This situation was the fault of the city's agents, the engineers, and the Casey Company should not be held to more than a reasonable accountability in filing its bill of particulars.

■ The Casey Company, under the circumstances established by the evidence, is entitled to recover under the terms of the contract both express and implied. Discovery of the change of the location by the engineers in June, 1923, the probable imparting of this knowledge to the city late in 1923 or early in 1924, and the failure of either the engineers or the city to notify the Casey Company until the work was practically completed, certainly constitutes a breach of the implied covenants of the contract. Bates & Rogers Construction Co. v. Board of Commissioners (D. C.) 274 F. 659; Page, Contracts, vol. 5, § 2577.

The reason given by the officials of the engineers for not notifying the Casey Company when the mistake was first discovered was that they thought it did not make any difference. Even if it made no difference to the Casey Company it, as well as the city, certainly was entitled to the knowledge acquired by the engineers immediately upon the discovery of the mistake. The jury has, however, resolved the question of fact as to whether the mistake did damage the Casey Company, in favor of the Casey Company. In view of these circumstances the company is also entitled to recover under the express provisions of the contract for the reason that when the engineers discovered the mistake they certainly exercised an option in not giving the Casey Company the information to which it was entitled. The contract gave the engineers the option of changing the location; they found that by inadvertence they had changed the location and by their silence chose to ratify the change. The city was bound by their action. The pleadings in the case are broad enough to cover these principles as laid down. For a discussion of questions allied to the one here under consideration, see Wood v. Ft. Wayne, 119 U. S. 312, 7 S. Ct. 219, 30 L. Ed. 416; Carson v. City of Dawson, 129 Minn. 453, 152 N. W. 842; Wyandotte & D. R. Ry. v. King Bridge Co., supra; Shea v. Sewerage & Water Board, 124 La. 299, 50 So. 166; Teer v. George A. Fuller Co. (C. C. A.) 30 F.(2d) 30; Henderson Bridge Co. v. McGrath et al., supra; United Steel Co. v. Casey et al. (C. C. A.) 262 F. 889; Gearty v. Mayor, etc., of City of New York, 171 N. Y. 61, 63 N. E. 804; Ryder Building Co. v. Albany, 187 App. Div. 868, 176 N. Y. S. 456; The Sappho (C. C. A.) 94 F. 545; Hoy v. Bramhall, 19 N. J. Eq. 563, 97 Am. Dec. 687; U. S. v. Booth-Kelly Lumber Co. (D. C.) 246 F. 970; U. S. v. L. P. & J. A. Smith, 256 U. S. 11, 41 S. Ct. 413, 65 L. Ed. 808; Appeal of Lower, 1 Walk. (Pa.) 404; Wilson v. Williams, 25 Tex. 55; Corns-Thomas Engineering & Construction Co. v. McDowell County Court, 92 W. Va. 368, 115 S. E. 462; Long v. Athol, 196 Mass. 497, 82 N. E. 665, 17 L. R. A. (N. S.) 96; Hollerbach v. U. S., 233 U. S. 165, 34 S. Ct. 553, 58 L. Ed. 898; Berry v. Huntington Masonic Temple Assoc., supra.

As to the question whether the Casey Company was as a matter of law put on notice as to the change of location, see

Northwestern Portland Cement Co. v. Atlantic Portland Cement Co., 174 Cal. 308, 163 P. 47; In re Locust Building Co. (C. C. A.) 299 F. 756.

After the Casey Company discovered the mistake, when the work was practically completed, they offered to arbitrate the question as to the damages they had suffered, under an arbitration clause in the contract, but they were directed by the engineers to continue the work, and their offer to arbitrate was not accepted.

■ On first discovering the mistake the Casey Company called on the engineers to furnish them the plans and specifications under which the change of location was made and were at first informed that there were no such plans. Afterwards the engineers did furnish a blueprint showing the location of the buildings as they were actually constructed. Objection was made on behalf of the city to the introduction of this blueprint in evidence, which objection the court overruled. This ruling of the court is made the subject of one of the assignments of error and we are of the opinion that the court's ruling was correct. The blueprint came from the agents of the city and was certainly proper evidence.

It is contended on behalf of the city that the evidence as to the damages sustained was not sufficient to support the verdict, but an examination leads us to the conclusion that there was ample evidence which, if believed by the jury, would justify the verdict.

■ Numerous exceptions were taken to the action of the trial judge in granting certain instructions and in refusing to grant other instructions. A careful consideration of these exceptions leads us to the conclusion that there was no reversible error in the granting or refusal of instructions. Reading the instructions offered, together with the oral charge to the jury, and they should be considered as a whole, we are of the opinion that the case was presented with absolute fairness to the city.

■ During the argument of the case before the jury one of the counsel for the Casey Company remarked that the city would not suffer in the event of the jury finding against it, but could in turn collect from the engineers, whereupon the judge immediately said to the jury: "Gentlemen of the jury, you will disregard that; put it out of your minds. It is not a matter for you as to who is the defendant or who is the plaintiff, as to where they may come from, or what they may do. You have taken a solemn oath to decide that from the evidence, and that evidence, and that alone, must govern this verdict."

Again, in his charge to the jury the judge directed that no weight be given to this remark. While the remark was manifestly improper we do not think it is of the same character as remarks dealt with in decisions where it is disclosed, during a trial, that a defendant carried indemnity insurance. Here no fact was brought into the case by this remark, which was merely the attorney's opinion as to a conclusion of law on the admitted facts, and in view of the prompt and repeated action of the trial judge we do not consider it reversible error. The case of New York Central Railroad v. Johnson, 279 U. S. 310, 49 S. Ct. 300, 73 L. Ed. 706, relied upon on behalf of the city on this point is not controlling, as there the circumstances were entirely different.

The city selected the engineers; the engineers made a mistake and after discovering the mistake concealed it from the Casey Company; the city was primarily bound by this action of the engineers and legally and morally bound to respond to the Casey Company for whatever damages they may have suffered.

The verdict of the jury was amply supported by the evidence; there was no reversible error in the trial; and the judgment of the court below is accordingly affirmed.